Patrick C. Bageant (No. 10291)
HOLLYSTONE LAW
1775 West State Street, No. 286
Boise, ID 83702
Telephone: 208-596-5343
Facsimile: 208-686-8247
email: pbageant@hollystonelaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA FERNANDA ELOSU AND ROBERT LOUIS BRACE, Individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDDLEFORK RANCH INCORPORATED, an Idaho Corporation,<br><br>Defendant. | Case No. 1:19-cv-267<br><br>COMPLAINT<br>FOR MONEY DAMAGES |

Plaintiffs Maria Fernanda Elosu ("Elosu") and Robert Louis Brace ("Brace"), through their undersigned attorneys, as and for their complaint against Middlefork Ranch Incorporated ("MFR"), allege as follows:

NATURE OF THE ACTION

1. This diversity action is a tort claim for negligence by MFR that caused the complete loss of Elosu and Brace's summer home on July 20, 2017. The fire was caused by an MFR employee who lit a refrigerator pilot light on an oil-stained deck, despite knowledge of the hazard and despite requests to the contrary by one of the Plaintiffs. The negligent employee was working within the course and scope of his employment with MFR when he lit the pilot light, and the pilot light caused a fire that destroyed the home.

JURISDICTION AND VENUE

2. This United States District Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, and because Plaintiffs and Defendant are citizens of different states: Plaintiffs each are residents of California and Defendant MFR is an Idaho corporation with its principal place of business in Valley County, Idaho.

3. Venue is proper in this district under 18 U.S.C § 1391(b)(1)-(2) because MFR resides in this judicial district, and because a substantial part of the events giving rise to the claims below occurred in this district. Further, the real and personal property owned by Elosu and Brace and injured by MFR is located within this district, the conduct at issue took place and had an effect within the district, and MFR regularly conducted and still regularly conducts substantial business in the district.

PARTIES

4. Plaintiff Maria Fernanda Elosu ("Elosu") is an individual residing in California. She is one of two legal co-owners of real property in Valley County, Idaho commonly referred to as "Cabin #16." Cabin #16 was located on a parcel in Valley County at Pistol Creek Ranch

on the Middle Fork of the Salmon River. The Assessor for Valley County describes the parcel as number RP001690000040, with a mailing address of 4 Pistol Creek Airfield. The parcel description is "Middlefork Ranch, Inc. Lot 4 Scenic Easement Parcel No. 6."

5. Plaintiff Robert Louis Brace ("Brace") is an individual residing in California. He is the second legal co-owner of the real property described in paragraph 4, above.

6. Defendant Middlefork Ranch, Incorporated ("MFR") is an Idaho corporation that does business as "Pistol Creek Ranch." Its principal place of business is the Pistol Creek, Idaho, area including and immediately surrounding the property described in paragraph 4 above. MFR acts as a homeowners' association for the owners of approximately 20 cabins (which include Plaintiffs' Cabin #16), all of which are located on the banks of the Middle Fork of the Salmon River. MFR's mailing address is HC 83 Box 1180, Cascade, Idaho, 83611.

## FACTS

7. At approximately 4:00 PM on July 20, 2017, Cabin #16 burned to the ground because MFR, though an employee, failed to exercise reasonable care. Specifically, MFR decided to ignite the pilot light to a propane refrigerator despite knowing (after having been verbally warned) that the refrigerator was located on a wooden deck that had just been stained with volatile, oil-based chemicals, and despite knowing that the pilot light – once lit – would introduce an open flame in an explosive environment.

8. Cabin #16 is (or was) one of approximately 20 cabins located at Pistol Creek Ranch, which is inside the Frank Church River of No Return Wilderness. Access to the ranch is limited to walking, riding horseback, rafting down the river, or small airplane landing on a dirt air strip.

9.  MFR owns certain common areas used by homeowners at Pistol Creek Ranch. MFR also provides certain services to homeowners at Pistol Creek Ranch in exchange for fees.

10. In July of 2017 one of MFR's services was the sale, delivery, and installation of filled propane bottles, which MFR brought to Pistol Creek Ranch by air from Cascade, Idaho.

11. During the relevant time period, non-party Mr. David Rosen was an employee and agent of MFR. Mr. Rosen's duties included, among other things, the task of exchanging empty propane bottles of homeowners at Pistol Creek Ranch for full ones.

12. Cabin #16 used such propane bottles in a number of places, including to power a propane-fired refrigerator located on a wooden deck adjacent to the cabin. On July 20, 2017, Mr. Rosen exchanged an empty propane bottle connected to this refrigerator for a full one, and ignited the pilot light to start the refrigerator. Mr. Rosen's actions were within the course and scope of his job assignments at MFR, were done at the direction of the manager of MFR, and have been ratified by MFR as acts within the course and scope of Mr. Rosen's employment with MFR.

13. One day before Mr. Rosen changed the propane bottle at Cabin #16, on the evening of July 19, 2017, between 7:00 and 10:00 PM, Brace stained the majority of the outside deck of Cabin #16 with Penofin Rosewood Oil ("Oil"). To do so, Brace used a nine-inch paint roller with a medium density knit fabric stain applicator, which he discarded into a plastic bag and trash can on July 19, 2017. That night Brace also used one rag to remove the roller applicator from the roller. Brace discarded this rag on a small hill next to Cabin #16's garage, among rocks. That same rag is possessed by Brace and will be introduced as an exhibit at trial. Two additional clean rags at the property were unused.

14.     The next day (July 20, 2017), Brace was scheduled to return to California to work for ten days before returning to Idaho to be at Cabin #16 with his wife and children. Before his departure that morning, Brace observed that the deck was still wet with Oil. He informed Elosu to avoid smoking on the deck until the Oil dried, removed the barbeque grill from the deck, and checked the outdoor refrigerator referenced in paragraph 12 above. The outdoor refrigerator – which held beer and frozen vegetables that had thawed and were no longer edible – was cool but off as it had run out of propane. Elosu did not need the outdoor refrigerator while Brace was gone.

15.     Brace departed Pistol Creek at approximately 8:15 AM on July 20, 2017. In Boise, at approximately 10:00 AM, Brace called Elosu via Apple Facetime and requested that she attempt to dry the wet patches of Oil on the deck with the two clean, unused rags. Brace requested that when Elosu was done she discard any oily rags in an outdoor metal fire pit, which was located away from the house at the edge of the property. Elosu and her son Augustine Brace each used a rag and dried wet Oil in front of the doors to the living room facing the river side. Augustine then discarded his wet rag in the metal fire pit as Elosu had directed. Shortly after, Elosu discarded the second rag in the same pit and saw Augustine's first rag lying flat on the inner wall of the pit.

16.     At approximately 11:00 AM on July 20, 2017, neighboring homeowners arrived at Cabin #16. They observed that the deck was still wet with Oil. The deck also was still wet with oil at or about 2:00 PM when Mr. Rosen arrived to check the propane bottles at Cabin #16. When Mr. Rosen arrived or about 2:00 PM there were numerous neighbors at Cabin #16 waiting for Elosu to join them on a trip to swim in the river. The neighbors stood on the lawn at Cabin #16 and not in the shade of the deck because the deck was still wet with Oil.

17. Elosu felt pressed for time because Mr. Rosen was checking on the propane while the neighbors were simultaneously waiting for her to depart on their hike to the river. Mr. Rosen and Elosu had a short conversation and examined the propane refrigerator together, which established that the refrigerator was not operational.

18. Mr. Rosen announced that the reason the refrigerator was not operational was that the propane tank was empty. Mr. Rosen said he would change the empty propane bottle for a full bottle and start the refrigerator by igniting the pilot light. Elosu told Mr. Rosen that:

   a. she did not need to use the outside refrigerator;

   b. she felt lighting the refrigerator would be dangerous because Mr. Rosen was standing in wet Oil which surrounded the refrigerator; and

   c. the Oil Brace used to stain the deck was in a bucket in the garage if Mr. Rosen wanted to inspect it for labels or warnings.

19. Elosu had observed that when Mr. Rosen knelt to examine the refrigerator the sole of his work boot was dripping with wet Oil. She asked him if – in light of the wet Oil – it was safe to ignite the refrigerator. In response, Mr. Rosen moved the refrigerator away from the wall and told Elosu it was "safe" to light because, in his view, there was no wet Oil directly underneath the refrigerator where the pilot light flames and compressor were located. The night before Brace had applied the Oil around the refrigerator but not directly beneath it.

20. Shortly after 2:00 PM on July 20, 2017, and notwithstanding what Elosu had told him, Mr. Rosen ignited the pilot light on the propane refrigerator located on the wet oily deck of Cabin #16. From 2:00 to 4:00 PM the sun's rays were directed onto the northwestern section of the deck, precisely where the propane refrigerator was located.

21. At approximately 4:00 PM, flammable vapors (which the drying Penofin Oil had released into the air) came in contact with the propane-sourced flame burning in the now-ignited propane refrigerator. The propane flame ignited the Penofin vapors, which caused Cabin #16 to quickly catch fire, and burn. The cabin and all of its contents were destroyed.

22. Mr. Rosen's decision to light the propane refrigerator after Elosu informed him that he was standing in wet Oil, after he had personally observed the wet Oil on the deck, and after he understood that the outdoor refrigerator was not needed, was negligent.

23. The fire caused by MFR's negligence resulted in losses to the Plaintiffs that exceed $1.5 million. Cabin #16 was built in or about 2004, at a cost of approximately $850,000, and the cost of backcountry construction is far greater today. Next door to Cabin #16 is Cabin #17, which is of similar size and design. Today, Cabin #17 is being built at a cost of approximately $1.5 million. The cost to rebuild Cabin #16 also will be approximately $1.5 million, or such number as will be proven at trial.

CAUSE OF ACTION: NEGLIGENCE

24. Plaintiffs incorporate the foregoing paragraphs 1-23 as though set forth fully herein.

25. MFR, individually and through its agent, Mr. Rosen, had a duty at the time of the events described above, including on July 20, 2017, to use ordinary care for the safety of Plaintiffs and their property.

26. MFR's duties included, among other things, a duty to not create an undue risk of fire, to heed cautionary instructions about the presence of volatile chemicals, and to not engage in actions that provided no benefit (e.g., lighting an unused refrigerator) while also exposing Plaintiffs' property to great risk (e.g., catastrophic loss).

27. A reasonably careful person in the same or similar circumstances, in the course of selling, delivering, handling, or installing propane, or in the business of maintaining, servicing, watching over, or otherwise interacting with the property of another, would not have introduced an open flame to a wooden deck, in the hot sun, if that deck was covered with volatile oil that was evaporating and creating flammable vapors.

28. MFR, though its agent Mr. Rosen, breached these duties. Mr. Rosen's decision to light a propane refrigerator, on a wooden deck covered in still-wet volatile Oil, during the hottest part of the day, despite being warned of the Oil's presence, being questioned about safety, and being informed that the refrigerator would not be used, each was an action that fell below the ordinary standard of care.

29. Each of MFR's breaches was the proximate cause of the fire that destroyed Cabin #16 because – in natural and probable consequence – they are what caused the fire to occur. Mr. Rosen's decision to light the refrigerator introduced the presence of fire to a volatile environment, and that condition in turn caused the total loss of Cabin #16.

30. Each of MFR's breaches also was the actual cause of the fire that destroyed Cabin #16 because, but for those breaches, the loss would not have occurred.

31. As a result of MRF's breaches and the fact that they caused the total loss of Cabin #16, Plaintiffs' have suffered damages in an amount that remain to be proven at trial but which exceed $1.5 million.

DEMAND FOR JURY TRIAL

The Plaintiffs demand a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendant as follows:

1. Awarding Plaintiffs' actual economic and non-economic damages, in an amount to be determined at trial;

2. Awarding general damages to Plaintiffs in an amount to be determined at trial;

3. Awarding to the Plaintiffs their attorney fees and costs;

4. Awarding the Plaintiffs prejudgment interest on all liquidated sums; and

5. Granting the Plaintiffs such other relief, at law and in equity, as this Court deems just and proper.

Dated: July 11, 2019, by:   /s Patrick C. Bageant
Patrick C. Bageant

HOLLYSTONE LAW
1775 West State Street, No. 286
Boise, ID 83702
Telephone: 208-596-5343
Facsimile: 208-686-8247
email: pbageant@hollystonelaw.com

*Attorneys for Plaintiffs*