GERALD KOBLUK, ISB #9898
KSB LITIGATION, P.S.
510 W. Riverside Ave., #300
Spokane, WA  99201
Telephone: (509) 624-8988
Facsimile: (509) 474-0398
gkobluk@ksblit.legal

Attorney for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

MARIA FERNANDA ELOSU and ROBERT
LOUIS BRACE, Individuals,

                Plaintiff,

v.

MIDDLEFORK RANCH
INCORPORATED, an Idaho Corporation,

                Defendant

Case No. 1:19-cv-267

DEFENDANT'S MOTION TO
EXCLUDE EXPERT TESTIMONY
PURSUANT TO *DAUBERT* AND
ER 702

        Defendant, Middlefork Ranch, files the following Motion to Exclude Plaintiff's

experts, pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), and ER

702. Specifically, Defendant requests that this Court enter an order to:

        1.     Exclude the opinions of Plaintiff's experts that are advanced without sufficient

factual or scientific basis, including:

           a.   Plaintiff's fire investigator, Michael Koster's speculative and unsupported

               opinion regarding the cause and origin of the fire;

           b.   Plaintiff's mechanical engineer, Richard Mumper's opinion regarding the

               cause of the fire that is unrelated to his engineering expertise; and

           c.   Mr. Mumper's legal conclusions and factual statements.

DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY - 1

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

2.    Exclude untimely materials and expert analysis not contained in expert reports, not disclosed in accordance with Court Order or civil rules, and not relied upon as a bases for opinions.  This includes questionable "experiments" and analyses for which Defendant had no fair opportunity to respond:

> a.   Spontaneous combustion "testing" performed by Mr. Koster and chemist Doug Byron in Mr. Koster's back yard;
>
> b.   Mr. Mumper's air flow analysis and related computer modeling.

## FACTS RELEVANT TO MOTION[1]

### Cabin and Events Leading to Fire

1.    Plaintiffs owned a vacation cabin in remote Valley County, Idaho, at Middlefork Ranch, Inc. (known as Pistol Creek Ranch) on the Middle Fork of the Salmon River. The cabin was commonly referred to as Cabin #16.  The Ranch and cabin are accessed only by a dirt airstrip. (ECF 1, ¶¶ 4-5, 8).

2.    On July 20, 2017, Cabin #16 burned to the ground and was a complete and total loss. (ECF 1, ¶¶ 7, 21). There was no one at the cabin at the time of the fire, and there are no witnesses to how the fire started.

3.    Cabin #16 had a "wrap around" covered deck, which extended all along the east (river facing) side of the cabin, and partially around the south and north sides.  (The following photo is of the north-east corner: the long east deck is to the left, and the short north deck is in the center of the photo in the shade.).

---

[1] All referenced deposition excerpts and exhibits are attached as Exhibits to the Declaration of counsel, Gerald Kobluk.

**DEFENDANT'S MOTION TO EXCLUDE**
**EXPERT TESTIMONY** - 2

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

1

2

3

4

5

6

7

8

9

10



11

(Rauch Depo., Exh. 8).

12       4.      The day before the fire, on July 19, 2017, Plaintiff Robert Brace, stained

13  various surfaces of the decks and posts with Penofin oil stain. (ECF 1, ¶ 13).  This included

14  all of the east deck, posts, and the north deck. (Brace Depo. 17:15-18:15; 25:6-7).

15       5.      Pursuant to the Penofin manufacturer, Penofin oil becomes dry to the touch in

16  four hours, and is serviceable in 12 hours. (Koster Depo. 69:9-21). The Penofin oil can also

17  contains a warning that the oil stain is flammable and there is a potential for "spontaneous

18

19  combustion." (*Id*. at 50:18-25).

20       6.      On the north deck at the time Plaintiff stained the deck was a propane

21  refrigerator.  (ECF 1, ¶ 14; Brace Depo. 42:7-9).  Plaintiff applied oil stain up to and around

22  the fridge, but not underneath it.  (Brace Depo. 38:10-20). The fridge was on and in use at

23  the time. The fridge had a lit pilot light in the back. Plaintiff did not turn the pilot light off

24  during or after applying the oil stain.  (*Id*. at 89:18-21).

25

26

27

28

7.      That night, Plaintiffs had guests over.  An old couch and a $5,000 teak picnic table that had been moved off the deck during staining were moved back. (Brace Depo. 18:22-20:5; Elosu Depo. 12:12-20).   Plaintiff Fernanda Elosu and her guest smoked cigarettes while sitting on the newly stained deck. (Elosu Depo. 12:21-13:3; 16:19-25; 19:4-21; and 21:17-19).  Plaintiff Brace found ashes on the newly stained deck the next morning. (Brace Depo. 32:11-14).

8.      Plaintiffs claim the deck was still wet the next morning, July 20, 2017, and they attempted to clean the wet spots with cotton rags. (ECF 1, ¶¶ 14-16; Brace Depo. 26:18-25; 27:22-29:13; Elosu Depo. 25:11-24; 29:18-25; 30:11-14 and 31:9-33:23).  Whether and how those rags were disposed of is in dispute.

9.      Plaintiff Brace, left the cabin and flew out by 8:00 am, leaving the rags he used on the east deck for his wife (Plaintiff Elosu) and young son. (ECF 1, ¶ 15; Brace Depo. 30:22-31:1 and 31:8-10; Elosu Depo. 26:17-23). Plaintiff Elosu had another cigarette that morning, but does not recall what happened to the butt. (Elosu Depo. 60:20-22 and 91:12-22).

10.      Around lunchtime, as Plaintiff Elosu and her children prepared to go to a swimming hole on the river with friends, a Ranch employee came by to check the propane. (ECF 1, ¶¶ 16-17; Elosu Depo. 43:18-44:13).  He found the propane attached to the fridge on the north deck either low or out (it is disputed whether the fridge was still on or had stopped during the night).  (ECF 1, ¶¶ 18; Elosu Depo. 51:9-10 and 53:2-7). The vegetables and contents of the fridge were still cold. (ECF 1, ¶ 14; Elosu Depo. 51:5-10).

11.      It is disputed whether the north deck near the fridge was still wet.  What is not disputed is that Plaintiff Elosu had a discussion with the Ranch employee, had him change

DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY - 4

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

the propane, and allowed her young son to help him re-light the pilot light. (Elosu Depo. 53:18-55:18; 57:23-58:5 and 59:15-19).

12.    In their Complaint, Plaintiffs allege the Ranch employee lit the pilot light "despite requests to the contrary." (Complaint (ECF 1) ¶ 1). But Plaintiff Elosu admitted never instructed him not to light the pilot. (Elosu Depo. 59:20-60:24). After he was finished, Plaintiff Elosu told the Ranch employee: "Thank you…everything was perfect." (*Id.* at 62:9-14 and 63:12-14).

13.    Plaintiff Elosu and her children then left the cabin for the swimming hole in the early afternoon. (*Id*. at 63:15-17). At approximately 4:00 pm, while they were still away and the cabin was empty, a fire started and eventually consumed the whole cabin. (ECF 1, ¶ 21).

14.    The first people to notice and respond to the fire were a group of contractors who were building a cabin next door. (Brace Depo. 40:1-10; 40:25-41:3).   When they first arrived, the fire was localized on the **east** deck, near the **south-east** corner. (Pyle Depo. 15:3-7; 17:12-23; 20:3-12; 33:3-7; 84:22-85:4; Rauch Depo. 13:4-18; 15:13-25; Gamez Depo. 14:12-17:25).  They tried to extinguish it with a garden hose, but aided by a significant 15-20 mph prevailing wind blowing from south to north up the canyon, the fire spread north to eventually engulf the whole cabin in flame. (Pyle Depo. 21:8-11; 22:2-23; Rauch Depo. 18:4-14; Gamez Depo. 18:11-13; 22:3-12; 31:11-13; 37:20-38:2). The fire suppression efforts then shifted to preventing the spread of the fire further north to other cabins and property.  (*Id.*)

**Pre-Litigation Investigation**

15.    Four days after the fire, Plaintiffs' homeowners insurer, Farmers, retained and sent a fire expert to the Ranch to investigate the scene.  (Brace Depo. 43:19-25 and 48:17-

**DEFENDANT'S MOTION TO EXCLUDE**
**EXPERT TESTIMONY** - 5

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

20). That expert, Shane Hartgrove, described a "black hole," and could not determine the cause or origin of the fire. (Hartgrove Depo. 58:13-59:6). He specifically considered whether the fire started due to the pilot light on the propane fridge on the north deck, but found no evidence to support that theory. (*Id*. at 32:1-23; 33:17-35:5; 47:13-49:8).

16.     The Ranch's insurer, Philadelphia Ins., also retained and sent its own fire expert to investigate the scene. That expert, Glenn Johnson, conducted a scene investigation on September 25, 2017 and interviewed various Ranch employees and cabin owners. (Johnson Depo. 116:6-10; 116:20-117:8). At that time, both investigators, Mr. Johnson and Mr. Hartgrove, also jointly interviewed the contractors who were the first to respond to the fire. (Hartgrove Depo. 37:12-38:3).

17.     All of the contractors interviewed, including Kenny Pyle, Regee Rauch, and Greg Gamez, confirmed that the fire was initially located on the **east** deck at the **south-east** corner, and there was **no fire on the north deck** where the propane fridge was located. (Hartgrove Depo. 18:23-19:20; 37:12-38:3; 40:3-23; 41:8-42:19; 44:2-12). In particular, Mr. Pyle fought the fire on that south-east corner with a garden hose. (Pyle Depo. 20:18-20; 21:8-22:17; 34:16-36:25; 84:22-85:4). Mr. Rauch, meanwhile, went around the cabin banging on windows to check if anyone was inside. (Rauch Depo. 14:13-21; 16:1-6; 31:12-15). He first went to the west entrance and with another person, kicked in the front door. Inside, he saw "big flame," "a lot of fire and smoke." (*Id*. at 16:9-21; 17:9-13; 32:24-33:5). Not able to go inside, Mr. Rauch then continued around the outside of the cabin, all the way around to the north side, banging on windows next to the fridge. (*Id*. at 17:14-23). There was no fire on the north deck of the cabin at that time. (*Id*. at 17:24-18:3; 18:15-17; 19:9-19; 38:2-39:2). (The photo in paragraph 3 above is an exhibit from Mr. Rauch's deposition, on which he marked

DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY - 6

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

his location on the north side of the cabin. His location at the edge of the north deck is where the fridge was located).

18.    The diagrams and photos below are from the subsequent depositions of these contractors, Pyle, Rauch, and Gamez, who marked in red pen the initial location of the fire, and in blue pen their own paths of travel.  The north deck, where the propane fridge was located, is on the opposite side of the cabin from their indications of the initial location of the fire:

 

(Pyle Depo. exhs. 1 and 3).

 

(Rauch Depo. exhs. 6 and 7).

DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY - 7

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988




(Gamez Depo. exhs. 9 and 11).

19.     The photo below was from a video taken by Mr. Gamez early on in the fire but after initial attempts to extinguish it with a garden hose.  (Gamez Depo. 26:2-4; 26:12-27:7). The photo is from the south side of the cabin; the large flame is on the south-east corner of the east deck, where all of the contractor witnesses testified was the initial location of the fire. (*Id*. at 14:12-22; 16:15-17:5; Pyle Depo. 23:25-24:6; 33:3-7; Rauch Depo. 15:9-21). The wind was blowing the smoke and fire from the south to the north (away from the camera). The north deck with the propane fridge is on the opposite side of the cabin (away from the camera).



**DEFENDANT'S MOTION TO EXCLUDE**
**EXPERT TESTIMONY** - 8

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

20.     Fire investigator Johnson, like Mr. Hartgrove, was unable to determine on a more probable than not basis what caused the fire.  (Johnson Depo. 118:3-7).  Because of unresolved questions about how the oil stain was applied and how oil soaked rags and materials may (or may not) have been disposed, Mr. Johnson opined that it was possible the fire was the result of spontaneous combustion.  (*Id*. at 35:9-12; 36:3-13; 124:9-21). However, due to the testimony from the disinterested witnesses about the initial location of the fire, combined with early photos, he was able to determine the area of origin on the east deck near the south-east corner, and rule out the north deck (and the propane fridge/pilot light on that north deck) as the area or point of origin.  (*Id*. at 34:25-35:8; 62:16-18; 115:22-116:2).

21.     Mr. Johnson's report, dated October 1, 2017, was provided to Plaintiffs on October 18, 2017. (Kobluk Decl. ¶ 10). This report included the accounts gathered from the first responding witnesses, Pyle, Rauch and Gamez.

22.     Plaintiff later requested the audio recording of the fire investigators' interviews of these contractor witnesses. This audio recording was also provided to Plaintiff. (*Id*.).

23.     As a result of the fire investigations, including the witness testimony, Plaintiffs' homeowners insurer paid its policy limits to Plaintiffs, and waived any potential subrogation claim against the Ranch. (Brace Depo. 51:6-7; 52:1-5 and 62:3-10).

24.     Plaintiffs subsequently retained their own fire investigator from California. (Plaintiff is himself an attorney residing in Southern California). (*Id*. at 5:17-23; 6:15; 51:7 and 18-21). Plaintiff's fire investigator, Michael Koster, visited the scene almost a year after the fire, in May 2018.  (Koster Depo. 15:10-16:1). Mr. Koster in turn retained a mechanical engineer, Richard Mumper, to conduct a laboratory analysis of materials gathered at the

**DEFENDANT'S MOTION TO EXCLUDE**
**EXPERT TESTIMONY** - 9

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

scene, including remnants of the propane fridge at issue. (*Id.* at 102:1-10; Mumper Depo. 6:17-18; 17:5-21; and 38:17-39:13).

25.     Plaintiffs' experts did not interview any witnesses. (Koster Depo. 29:11-14; Mumper Depo. 35:18-20). They spoke only to Plaintiffs and accepted and relied solely on their version of disputed facts.  (Koster Depo. 28:23-29:4; 43:18-25; Mumper Depo 35:18-20).

26.     Koster and Mumper have opined that the fire originated on the **north** deck as a result of Penofin oil and vapors being ignited by the pilot light on the propane fridge. (Koster Depo. 40:11-17; Mumper Depo. 76:21-23).  Plaintiffs disclosed Koster's initial fire investigation report to the Ranch on February 16, 2019, and Mumper's mechanical engineering report on April 3, 2019.  (Kobluk Decl. ¶ 11).

**Litigation Deadlines and Disclosures**

27.     Plaintiffs filed their lawsuit against Middlefork Ranch on July 11, 2019. (ECF 1).

28.     Initial disclosures were exchanged in accordance with the Court's Order (ECF 6) and Fed.R.Civ.P. 26(a)(1) on October 25, 2019.  These included references to the experts and written reports already exchanged pre-litigation.

29.     The contractor witnesses who were the first responders, Pyle, Rauch and Gamez, were deposed in December 2019.  These witnesses confirmed what they told fire investigators Hartgrove and Johnson when interviewed two years earlier, in September 2017, about the initial location of the fire on the south-east corner of the east deck, and the absence of fire on the north deck. (Pyle Depo. 33:7-20; Rauch Depo. 24:14-21; Gamez Depo. 25:1-9).

**DEFENDANT'S MOTION TO EXCLUDE**
**EXPERT TESTIMONY** - 10

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

30.     According to the Order Setting Trial and Pretrial Dates (ECF 13), the deadline for expert witness disclosures was January 10, 2020.  On that date, Defendant referred to Johnson's fire investigation report previously disclosed in October 2017.  (Kobluk Decl. ¶ 14). Plaintiffs produced updated reports from their fire investigator, Koster, and mechanical engineer, Mumper.  (*Id*.). The updates to the pre-litigation reports were minor and not substantive.  (*Id*.; Koster Depo. 26:6-10; Mumper Depo. 21:8-13).

31.     Pursuant to Fed.R.Civ.P. 26(a)(2)(D)(ii), Defendant disclosed a Rebuttal report from its fire expert, Johnson, on February 10, 2020.  (Kobluk Decl. ¶ 15).

32.     Plaintiffs did not disclose any Rebuttal report from their experts.

33.     Following the passing of the various Case Schedule and Court Rule deadlines for expert disclosures, the parties coordinated the depositions of Defendant's fire investigator, Johnson (February 19, 2020 in Spokane), and Plaintiffs' fire investigator, Koster, and mechanical engineer, Mumper (February 27, 2020 in California). (Kobluk Decl. ¶ 16).

34.     The deadline for completion of discovery was February 28, 2020. (ECF 13).

**Untimely/Late Disclosed Documents and Materials**

35.     On February 25, 2020, at 8:26 pm—45 days after the expert report deadline, 15 days after the deadline for rebuttal reports, and 2 days before the discovery cut-off—Plaintiff's counsel emailed Defendant's counsel a link to "supplemental production of documents," which was voluminous, and included information and materials not contained in any previous disclosure or report.  (Kobluk Decl. ¶ 17). The new and previously undisclosed information and materials included a spontaneous combustion "experiment" that Koster performed in a cardboard box in his California backyard, and computer wind

DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY - 11

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

modeling and air flow analysis done by Mumper at Koster's request.  (Kobluk Decl. ¶ 18; Koster Depo. 117:25; Mumper Depo. 22:25-23:15).

36.    February 26 was a travel day, as counsel made their way to California to depose Plaintiffs' experts, Koster and Mumper on February 27.  Defendant's counsel was unable to reasonably or meaningfully review the newly dumped materials, nor examine Plaintiffs' experts as to the reasonableness, reliability or sufficiency of the untimely experiments or analysis, which are not contained in any expert report. (Kobluk Decl. ¶ 19; Mumper Depo., 23:15; 84:25-85:3).

37.    Fire investigator Koster admitted that the untimely analysis, testing, and materials did not factor into his previously formed opinions. (Koster Depo. 104:12-105:7).

## DISCUSSION

### A.    *Daubert* Standard.

In deciding the admissibility of expert testimony, courts have a "gatekeeping obligation" to ensure expert testimony is reliable. *Kumho Tire Co., Ltd., v. Car Michael, etc.*, 526 U.S. 137, 141 (1999). F.R.E. 702 requires that expert testimony: (1) be based upon sufficient facts or data, (2) be the product of reliable principles or methods, and (3) reliably apply the principles and methods to the facts of the case. Under *Daubert*, expert opinion testimony must be relevant and reliable. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), as amended (Apr. 27, 2010) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The trial court has discretion to determine whether the expert and proffered testimony are reliable. *Id.* at 564. The methodologies employed by the proffered expert are the focus of the court's inquiries. *Id.* ("The test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology."); *see also Daubert v. Merrell*

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

*Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir.1995) ("Daubert II")("[T]he party presenting

the expert must show that the expert's findings are based on sound science, and this will

require some objective, independent validation of the expert's methodology.").

      Proponents of the expert witness have the burden of demonstrating the admissibility

of the testimony. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). The admissibility of

an expert opinion requires a three-step analysis:

> The admissibility of expert testimony, Rule 702, requires that the
> trial court make several preliminary determinations, Rule 104(a).
> The trial court must decide whether the witness called is properly
> qualified to give the testimony sought. A witness may be qualified
> as an expert on the basis of either knowledge, skill, experience,
> training, or education or a combination thereof, Rule 702. The trial
> court must further determine that the testimony of the expert
> witness, in the form of an opinion or otherwise, will assist the trier
> of fact, i.e., be helpful, to understand the evidence or to determine a
> fact in issue, Rule 702(a). Finally the trial court must determine that
> as actually applied in the matter at hand, Rule 702(d), to facts, data,
> or opinions sufficiently established to exist, Rule 702(b), including
> facts, data, or opinions reasonably relied upon under Rule 703,
> sufficient assurances of trustworthiness are present that the expert
> witness' explanative theory produced a correct result to warrant jury
> acceptance, i.e., a product of reliable principles and methods, Rule
> 702(c).

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 971 (N.D. Cal. 2019) (quoting

Michael H. Graham, 5 HANDBOOK OF FED. EVID. § 702:1 (7th ed.)). The court's

objective "is to make certain that an expert, whether basing testimony upon professional

studies or personal experience, employs in the courtroom the same level of intellectual rigor

that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S.

at 152.

    **1.**  **<u>Plaintiff's fire investigator, Michael Koster's speculative and unsupported<br>opinion regarding the cause and origin of the fire must be excluded</u>**.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff's fire investigator conducted a scene investigation and performed his cause and origin analysis almost a year after the fire. He received his factual information about the sequence of events from the investigation reports of the initial fire investigators, Johnson and Hartgrove. (Koster Depo. 28:19-20). Mr. Koster did not interview any witnesses, and relied solely on factual assertions made by Plaintiff. (*Id.* at 28:23-29:3 and 43:18-25).

Koster's "ultimate opinion" in this case is that the fire **originated along the north side of the residence.**" (*Id.* at 40:11-17).  Koster indicated the basis for that opinion was

> …a complete analysis of the fire scene, heat oxidation patterns, fire movement patterns and overall mass loss affect the remains of the structural members. A review of video footage, photographs, review of all interviews and transcripts and a complete review of all data provided to this investigative firm.

(*Id.* at 40:3-10).

But when asked to detail the specific findings regarding each of these various bases for his opinion, Koster acknowledged that there is no physical or testimonial evidence to support the theory that the fire started on the north deck.  Specifically, as to each item listed:

Heat oxidation patterns.  Koster testified that heat oxidation (accelerated rusting on remaining metal pieces) indicated "more significant heat" on north side of the cabin as compared with the other sides.  Koster admitted, however, that this was consistent with the fact that there was a significant wind blowing from south to north. (*Id.* at 56:11-13).  He would not say this indicated the fire *started* on the north side. (*Id.* at 54:24-55:4).

Fire movement patterns.  Koster admitted this was the same thing. (*Id.* at 56:17).

Overall mass loss.  Koster admitted that this was again the same thing: evidence of a more intense fire on the north side, which is consistent with the significant wind blowing from south to north.  (*Id.* at 56:18-25).

DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY - 14

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

1
2
3
4
5
6
7

     Review of video and photos.  Koster admitted the only video footage he had (video taken by contractor Gamez) did not show the fire starting on the north side. (*Id*. at 57:1-6). On the contrary, he admitted the video showed significantly greater fire on the east deck as compared with the north side. *(Id*. at 57:12; *see* photo at ¶19 above).   He also did mathematical calculations of heat output based on flame height, which confirmed what is shown in the photo: the fire was greater on the east deck than the north. (*Id.* at 57:13-20).

8
9
10
11
12

     Review of interviews and transcripts.   Koster admitted that none of the witness interviews or transcripts supported his theory that the fire started on the north deck. (*Id*. at 59:9-11).  This included the deposition transcripts from the contractor witnesses who confirmed what they first told the fire investigators in September 2017:

13
14
15
16
17
18
19

> Q:  Is there anything in Mr. Pyle's deposition that supports your theory
>      of the ignition source being on the north side of the deck?
> A:  No.
> Q:  Okay. Is there anything in Mr. Rauch's testimony which supports
>      your theory of the fire starting on the north deck?
> A:  No.
> Q:  And, in fact, he testified that he stood right next to the north deck
>      pounding on windows and there was no fire there, correct?
> A:  Absolutely.
> Q:  Okay. And was there anything in Mr. Gamez's deposition testimony
>      that supports your theory of the fire starting on the north deck?
> A:  No, it does not.

20

(*Id.* at 61:14 -62:4)

21
22
23
24
25
26

     Review of data provided.  Koster was  provided and reviewed the Material Safety Data Sheet for Penofin, which provided that the Penofin oil stain would be dry to the touch in four hours and serviceable in 12 hours.  (*Id. at* 69:2-21).  The fire occurred approximately 20 hours after the stain was applied. Koster's theory depends on the existence of "puddles or excessive amounts of stain applied to the deck," but he admits that description came solely

27
28

**DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY** - 15

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

1    from Plaintiffs, and he is aware of no other witnesses or corroborating evidence. (*Id*. at 70:2-
2    18).

3         Further, Koster's theory depends not only on the existence of excessive oil stain that
4    either pooled on the top of the deck, or seeped between the boards into the ground underneath
5    (and was still wet long after the manufacturer's data sheet indicated it would be), but also on
6    the weather conditions and temperature that existed on or under the deck. His theory is that
7    ambient temperatures exceeded the flash point of stain vapors, and these evaporating vapors
8    were ignited by the propane fridge pilot light. (*Id*. at 87:6-9; 99:18-100:1). The ignited vapors
9    then lit the excessive stain on the north and east decks. (*Id*. at 98:16-24).

10        Koster, however, admitted he had no data to support that theory: he admitted he had
11   no data or objective evidence to corroborate the sequence or timing of events (*Id*. at 63:13-
12   16).  He had no objective evidence to determine how much oil stain was used (*Id*. at 76:20);
13   how it was applied (*Id*. at 74:3-22); how much was cleaned up (*Id*. at 72:23); how much may
14   have seeped under the deck (*Id*. at 76:17; 89:21-24); what the ground/dirt was like under the
15   deck (*Id*. at 76:21-77:24); or whether the stain mixed with water used to pressure-wash the
16   deck prior to staining (*Id*. at 77:25-78:12).   Further, there is no weather data for Pistol
17   Creek/Middlefork Ranch (*Id*. at 84:21-25). Koster had no applicable temperature data. (*Id*. at
18   86:13-15).  Specifically, there is no data for the temperature of the east deck prior to the fire.
19   (*Id*. at 85:1-6); or the north deck (*Id*. at 85:8-11); or the void/crawl space under the deck (*Id*.
20   at 85:12-18; 99-100:1). He had no data as to the temperature of the covered decks or ground
21   surfaces that were in the shade as compared with ambient temperatures. (*Id*. at 86:1-15).
22   While there is testimony that it was windy (blowing through the canyon from south to north),
23   Koster admitted he had no climate or weather data to confirm the extent of the wind at Pistol

**DEFENDANT'S MOTION TO EXCLUDE**
**EXPERT TESTIMONY** - 16

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

Creek (*Id*. at 86:23-25). Likewise, he had no data as to the concentration of Penofin vapors (*Id*. at 92:12-16; 97:17-98:7), their location or source (*Id*. at 87:10-23), or their evaporation rate in the 20 hours leading up to the fire. (*Id*. at 94:5-17).

Plaintiffs have merely advanced a hypothetical, based solely on Plaintiffs' allegations but which is not supported by objective evidence. Koster admitted he reached his conclusion not by having evidence to support his theory, but by "disproving" other potential causes:

> Q: …what supports the conclusion that the fire started on the north side?
> A: Well, in order to get to that, we have to look at every angle or every possibility, not even proving, put trying to disprove other causes.

(*Id*. at 41:5-9; 42:21-23).

Koster further explained that he tried to disprove his hypothesis, and "if you can't disprove it, then *that could be a potential working hypothesis* that you're moving forward with." (*Id*. at 123:24-124:1). Proof requires more than the absence of evidence. A "working hypothesis" of what potentially "could" have happened—which is contrary to witness testimony and photographic evidence—is not sufficiently reliable to present to the jury without actual evidence to support the hypothesis on a more probable than not basis. Speculation couched as expert opinion is neither helpful nor proper. The unsupported opinions of Mr. Koster concerning the cause and origin of the fire should be excluded.

**2. Plaintiff's mechanical engineer, Richard Mumper's opinion regarding the cause of the fire must be excluded.**

Richard Mumper is a mechanical engineer. (Mumper Depo. 6:17). He is not a certified fire investigator, did not conduct a fire inspection and analysis, and cannot testify as to the results of such a fire investigation. (*Id*. at 8:9; 9:13; 24:18-19; 45:19). He did not participate in any site inspection or interview any witnesses. (*Id*. at 27:9-15; 35:20). Rather,

DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY - 17

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

Plaintiff's fire inspector, Koster, sent the burned remains of the propane fridge and other physical evidence from the scene to Mumper, who was to conduct a mechanical engineering examination of the materials in his laboratory to see if he could determine if such materials caused the fire. (*Id*. at 13:3-5; 14:13-15:21; 17:18-21; 24:10-17; 25:13-16; 39:6-13; Koster Depo. 101:11-102:4).

Mumper admitted in his deposition that his lab inspection did not reveal anything to support Koster's hypothesis that the fire started on the north deck due to the propane fridge pilot light. (Mumper Depo. 41-24-44:3). Specifically:

> Q: …is there anything that you found during your laboratory testing that would shed any light on the origin of the fire?
> A: Not on the laboratory inspection.
> Q: Okay.
> A: Just know that there's no indicator on any of those components that would indicate that they caused the fire.

(*Id*. at 44:6-13).

Likewise, Plaintiffs' fire investigator, Koster, testified that he never got a report from Mumper regarding his engineering analysis, but did have a conversation with him. (Koster Depo. 102:11-18). Koster acknowledged that Mumper was unable to show from a mechanical engineering standpoint where the fire started. (*Id*. at 103:3-16). Koster went on to admit that he did not use or rely on any information, lab testing, or mechanical engineering analysis from Mumper to support his cause and origin opinion:

> Q: …I just want to know what information you got from him [Mumper] was used to support your conclusion because you don't reference any of them in…your reports. So I…just need to know if you relied upon any of his testing or mechanical engineering in drawing your conclusions.
> A: No, my conclusion was already drawn way before that.

(*Id*. at 104:25-105:7).

**DEFENDANT'S MOTION TO EXCLUDE**
**EXPERT TESTIMONY** - 18

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

Because Mumper's mechanical engineering analysis of the physical evidence did not reveal anything to support Plaintiffs' hypothesis that the fire started on the north deck due to the propane fridge pilot light, and the fire investigator, Koster, did not consider or rely on his engineering analysis to formulate his opinion as to the fire's cause or origin, Mumper's testimony concerning the cause or origin of the fire should be excluded in its entirety as unsupported and unhelpful to the jury.

### 3. **Mr. Mumper's legal conclusions and factual statements must be excluded.**

Proffered experts are prohibited from opining on ultimate issues of fact since such opinions may "invade the province of" the jury. *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008) ("evidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible"). Further, proffered experts may not opine on questions of law which are matters for the court. *Id.* at 1058 (deciding questions of law is the exclusive province of the trial judge); *McHugh v. United Service Auto Assoc.*, 164 F.3d 451, 454 (9th Cir. 1999) (expert testimony cannot be used to provide the legal meaning or interpretation of insurance policy terms); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (expert opinion that reliance was reasonable and foreseeable were inappropriate subjects for expert testimony).

Apart from his mechanical engineering laboratory analysis—which turned up nothing useful—Mr. Mumper expressed various opinions that are beyond the scope of his mechanical engineering expertise. Again, he admitted he was not a fire investigator, and was ostensibly leaving the fire cause and origin analysis to Mr. Koster. (Mumper Depo. 8:9; 9:13; 24:18-19; 27:9-15; 41:1-4; 45:19). Mumper also is not a legal expert, and is not qualified to provide legal conclusions. (*Id.* at 9:8-23; 53:11-14). Yet Mumper purports to express opinions that

DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY - 19

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

are legal conclusions, or are simply restatements of Plaintiffs' version of disputed facts or Koster's conclusions. None of his opinions is based on his mechanical engineering expertise or analysis. Factual recitations or legal conclusions couched as "opinions" are improper and must be excluded.

First, Mumper opines: "*the fire did not occur due to the actions or inactions on the part of the Brace family*." (*Id*. at 46:1-3). That is a legal conclusion. It is for the jury to determine whose actions proximately caused the fire. Further, that conclusion is inconsistent with Plaintiff's own theory, which is based on the assertion that Mr. Brace applied an excessive amount of Penofin oil stain. It is also inconsistent with Ms. Elosu's testimony that she directed the Ranch employee to change the propane and re-light the pilot. Regardless, Mumper is neither qualified to advance a legal conclusion regarding fault, nor to resolve factual disputes, both of which are the province of the jury.

Second, Mumper opines that the fire was "*not caused by rags*." (*Id*. at 56:23-57:1). Mumper has here offered an opinion concerning the cause and origin of the fire while simultaneously and contradictorily conceding that he is not a fire expert would defer to a fire investigator as to the fire's cause and origins. Moreover, Mumper acknowledges that there are unaccounted for rags and oil-soaked materials, and merely accepts the allegations made by Plaintiffs. (*Id*. at 58:7-24; 62:10-13; 63:5-21; 66:11-15). This opinion is not supported by any mechanical engineering analysis, and is beyond Mumper's expertise.

Third, Mumper opines that the Ranch employee "*was familiar with the safety requirements*" and "*knew or should have known the dangers of lighting a pilot light*." (*Id*. at 67:4-5; 74:8-9). Mumper argued the employee's actions should equate with legal duties owed by propane providers, but admitted that was a legal question beyond his expertise. (*Id*.

DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY - 20

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

at 69:4-22). Otherwise, this is a factual dispute to which Mumper has no personal knowledge, and which is within the province of the jury. Mumper admitted that there was "nothing from a mechanical engineering perspective" that would resolve the factual dispute one way or the other. (*Id*. at 73:6-22).

Finally, Mumper's "concluding opinion" was: "*had [the Ranch employee] not introduced an open flame by…lighting the deck refrigerator pilot, the vapors from the penetrating oil on the deck would not have ignited the fire.*" (*Id*. at 76:18-23). Mumper is not a certified fire investigator and admitted he was merely "relying on…work that's done by Mike Koster." (*Id*. at 77:1-9). He is not qualified to give an opinion—unrelated to his mechanical engineering analysis—as to how the fire started. Mumper should not be allowed simply to repeat the conclusion expressed by another expert.

Further, whether the pilot light was already on when the Ranch employee changed the propane is a fundamental factual question for the jury. Mumper acknowledged he assumed plaintiffs' allegations and conceded that that factual determination was not based on any mechanical engineering analysis:

> Q: Did any of the laboratory testing that you did on that fridge either support or contradict the idea of whether the pilot light had been lit previously or relit or anything like that?
> A: No.

(*Id*. at 78:22-79:1).

Because Mumper did not conduct the fire investigation analysis—and is not qualified to do so—he should not be able to express an opinion as to the purported cause and origin of the fire. That opinion is admittedly not based on any mechanical engineering analysis, nor

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

supported by objective factual evidence.  As such, it is beyond the scope of his expertise, is not based on sufficient facts or data, and would invade the province of the jury.

**B.** **In Addition, This Court Should Not Allow Untimely Materials and Analysis Not Contained in the Experts' Reports, and Not Disclosed Pursuant to Court Ordered Deadlines**.

Rule 26(a)(2)(B) requires parties to produce a written report by each expert witness that includes "a complete statement of all opinions the witness will express and the basis and reasons for them [and the] facts or data considered by the witness in forming them." The report must be produced by the court ordered deadline. Fed.R.Civ.P. 26(a)(2)(B); *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). "Rule 37 gives teeth to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman*, 644 F.3d at 827 (internal quotation marks omitted). Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Id.* (quoting Fed.R.Civ.P. 37 advisory committee's note (1993)).

In the case at hand, without any explanation or justification, Plaintiffs disclosed additional documents from their experts Koster and Mumper 45 days after the expert report deadline, and 15 days after the deadline for rebuttal reports. Moreover, the disclosures were made just a day prior to the deposition of those experts by Middlefork Ranch's counsel, making preparation (during the travel day) impossible. Nor could the depositions be delayed as the Court ordered deadline to complete discovery was the next day.

Middlefork Ranch could not reasonably examine Plaintiffs' experts regarding the reliability or sufficiency of this newly dumped voluminous material, and was precluded from having its own experts review or analyze the untimely materials or preparing a rebuttal. Middlefork Ranch has been "obviously prejudiced" by the late disclosures for which there is

DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY - 22

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

no justification. The Court should exclude any and all untimely documents and information contained in the February 25, 2020 document dump entitled "supplemental production of documents." The inadmissible late materials include, but are not limited to, a spontaneous combustion experiment and a wind modeling/air flow analysis. These are complex scientific tests and analyses for which there was no opportunity to test their reliability, and that were not used to support the fire cause and origin opinions previously disclosed in any event (Koster Depo. 24:9-25:2). Defendant has been prejudiced by the late disclosure, inability to rebut, and inability to adequately prepare rebuttal evidence.

1. **Spontaneous combustion "testing" performed by Mr. Koster and chemist Doug Byron in Mr. Koster's back yard;**

In addition to being untimely and undisclosed in any expert report, Mr. Koster purports to have performed a spontaneous combustion fire experiment in a cardboard box sitting on a brick wall in the backyard of his southern California home. (Kobluk Decl. ¶ 18; Koster Depo. 117:24-118:1). The experiment was not performed under the same conditions, at the same latitude, the same altitude, the same temperature, the same humidity, the same barometric pressure, or much less in the same or similar circumstances whatsoever. The test experiment purported to test spontaneous combustion but it does not appear that any attempt was made to approximate or simulate the conditions that existed at the cabin in the mountains of central Idaho at the time of the fire.

Moreover, Koster admitted there is no temperature or climate data applicable to the Ranch or Cabin #16 from the time of the fire, nor is there competent evidence concerning the condition of the rags, mops or applicators used. The experiment was not conducted using a

**DEFENDANT'S MOTION TO EXCLUDE**
**EXPERT TESTIMONY** - 23

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

reliable methodology and all testimony concerning the experiment should be excluded. The untimely experiment is both unreliable and irrelevant and does not assist the trier of fact.

### 2.   Mr. Mumper's air flow analysis and related computer modeling.

Also contained in the untimely document dump were materials from mechanical engineer, Mumper, regarding air flow computer modeling.  Mumper admitted he was asked to do "additional work" consisting of air flow modeling only *after* the applicable expert disclosure deadlines had passed, and after disclosures had already been made regarding opinions and the bases therefore.  (Mumper Depo. 22:21-23:15 and 79:2-15).  Mumper further admitted he did not detail his air modeling analysis or results in any report.  (*Id*. at 23:13-15 and 85:1-3). Nor did fire investigator Koster consider or rely on any such air flow analysis or wind modeling as a basis for his cause and origin conclusions. (Koster Depo. 105:3-7 and 106:17-19).

During his deposition, Mumper indicated that he did the additional air modeling to address the testimony of contractor Regee Rauch, who was the contractor who went to the north deck pounding on windows, and testified that there was no fire there initially. But Plaintiffs knew of Rauch's observations and testimony when the contractors were interviewed by the fire investigators in September 2017.  Not only was his account included in fire investigator Johnson's report, produced to Plaintiffs in October 2017, the audio recording of the witness interviews was also produced to Plaintiffs at that time.  This witness information was referenced by Mumper in his initial April 2019 report, and was certainly available for Mumper to consider and respond to at that time.

At the very least, the contractors, including Rauch, confirmed their accounts during their depositions in December 2019. Mumper admitted he received and reviewed the

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

transcripts of these depositions prior to his updated January 10, 2020 report. (Mumper Depo. 23:19-24:6). Again, Mumper did not include any wind analysis or modeling in his updated report. (*Id*. at 23:5-15; 85:3).  Nor did he prepare or disclose a "rebuttal" report in accordance with Fed.R.Civ.P. 26(a)(2)(D)(ii). Documents regarding Mumper's undisclosed air flow modeling, dumped on the eve of his deposition and the discovery cut off are properly excluded.

## **CONCLUSION**

For the reasons stated herein, this Court should exclude the opinions of Plaintiffs' experts Michael Koster and Richard Mumper.


DATED this 23rd day of  October 2020.

/s Gerald Kobluk
Attorneys for Defendant

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988

1

## CERTIFICATE OF SERVICE

2

I HEREBY CERTIFY that on the 23rd day of October 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

3

4

Patrick C. Bageant, Attorney for Plaintiffs
pbageant@hollystonelaw.com

5

6

7

/s Gerald Kobluk

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY** - 26

*KSB LITIGATION P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WA 99201
(509) 624-8988