Patrick C. Bageant (No. 10291)
HOLLYSTONE LAW
1775 West State Street, No. 286
Boise, ID 83702
Telephone: 208-596-5343
Facsimile: 208-686-8247
email: pbageant@hollystonelaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA FERNANDA ELOSU AND ROBERT LOUIS BRACE, Individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDDLEFORK RANCH INCORPORATED, an Idaho Corporation,<br><br>Defendant | Case No.: 1:19-cv-267-DCN<br><br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY PURSUANT TO *DAUBERT* AND RULE 702 |

Plaintiffs Maria Fernanda Elosu and Robert Louis Brace submit this Memorandum In Opposition to Defendant Middlefork Ranch Incorporated's October 10, 2020, Motion to Exclude Expert Testimony Pursuant to *Daubert* and Rule 702.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     FACTS ........................................................................................................................1

III.    PROCEDRUAL HISTORY ........................................................................................3

IV.     LEGAL STANDARD ................................................................................................4

V.      ARGUMENT ..............................................................................................................4

        A.      Testimony of Mr. Michael Koster. ................................................................5

                1.      Mr. Koster's Opinion and its Bases Are Admissible................................5

                1.      Mr. Koster's Facts and Data Under Rule 702(b). ....................................7

                2.      Mr. Koster's Principles and Methods Under Rule 702(c). ...................12

        B.      Testimony of Mr. Richard Mumper. ............................................................12

                1.      Mr. Mumper's Testimony is Admissible Under Rule 702. ...................12

                2.      Mr. Mumper Does Not Offer Inappropriate Legal
                      Conclusions or Factual Statements............................................................14

        C.      Defendant's Timeliness Arguments Fail. .....................................................16

                1.      Mr. Mumper's Computer Modeling is Admissible. ................................17

                2.      Mr. Koster's Spontaneous Combustion Experiment is
                      Admissible. ................................................................................................20

VI.     CONCLUSION ........................................................................................................20

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

*i*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AUTHORITIES

<u>Cases</u>

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
   738 F.3d 960 (9th Cir. 2013)............................................................................4

*Allstate Ins. Co. v. Hugh Cole Builder, Inc.*,
   137 F. Supp. 2d 1283 (M.D. Ala. 2001) ........................................................4, 8

*City of Pomona v. SQM N. Am. Corp.*,
   750 F.3d 1036 (9th Cir. 2014)........................................................................4

*Columbia Grain, Inc. v. Hinrichs Trading, LLC*,
   No. 3:14-CV-115, 2015 WL 6675538 (D. Idaho Oct. 30, 2015)........................16

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .............................................................................4, 5, 8, 9

*General Electric Company v. Joiner*,
   522 U.S. 136 (1997)...................................................................................7, 9

*McCoy v. Whirlpool Corp.*,
   214 F.R.D. 646 (D. Kan. 2003).....................................................................6, 12

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008).....................................................................15, 16

*Peerless Ins. Co. v. Marley Engineered Prods. LLC*,
   No. 05-CV-4848, 2008 WL 7440158 (E.D.N.Y. June 12, 2008) ........................16

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010).....................................................................4, 6, 10

*Russ v. Safeco Ins. Co.*,
   No. 2:11-cv-195, 2013 WL 1310501 (S.D. Miss. Mar. 26, 2013).....................6, 12

*Schlesinger v. United States*,
   898 F.Supp.2d 489 (E.D.N.Y. 2012)...........................................................6, 12

*United States v. Idaho Cty. Light & Power Coop. Ass'n, Inc.*,
   No. 3:17-CV-00391, 2020 WL 603478 (D. Idaho Feb. 7, 2020)............................4, 6, 12, 16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

*ii*

1

<u>Rules</u>

2    Fed. R. Civ. P. 26(a)(2)(D)(ii) ...................................................................19

3

4    Fed. R. Evid. 702 ..................................................................................passim

5    Fed. R. Evid. 702(a) ...........................................................................5, 14

6    Fed. R. Evid. 702(b) .........................................................................passim

7    Fed. R. Evid. 702(c) .........................................................................passim

8    Fed. R. Evid. 702(d) ................................................................................5

9    Local Civil Rule 7.1...............................................................................15

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

HOLLYSTONE LAW
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

*iii*

## I.    INTRODUCTION

The Court should deny the Defendant's *Daubert* Motion. Confusing the well-established and clearly-delineated inquires that Rule 702 of the Federal Rules of Evidence requires, the Defendant's Motion makes factual arguments about how to draw inferences – not legal points about what is sufficient to form an admissible opinion (Rule 702(b)), or whether the opinion applies a reliable methodology correctly (Rule 702(c)). The Motion's arguments – at best – are jury arguments or fodder for cross-examination, but *Daubert* demands more. For these and the reasons that follow, Plaintiffs respectfully request that Defendant's Motion be denied.

## II.    FACTS

On July 20, 2017, Cabin #16 at Pistol Creek Ranch, in the Frank Church Wilderness east of McCall, Idaho, caught fire. (ECF No. 34 ("Mem.") at 2 ¶ 1.) Nobody was home at the time, and nobody saw the fire start, but workers constructing a cabin next door noticed smoke, ran to the scene, and attempted – without success – to save the building. (Exh. I at 65:9-14; Exh. J at 14:20-15:4.)[1] Although nobody witnessed the fire's inception, the Cabin was occupied that week. (*Id*.) Thus, events leading up to the fire are known.

It is known, for example, that a propane-fired refrigerator sat on the north deck of the Cabin. (*See, e.g.*, Exh. I at 19:22-24.) It is known that the refrigerator included a standing pilot flame – akin to a candle – located beneath and toward the back of the refrigerator. (Exh. A at 15.) It is known that shortly before the fire the pilot flame was not burning, but that it was then lit by an employee of Defendant. (*Id*.) The only sworn testimony about the decision to light the pilot flame is this: the Defendant's employee made that decision, against the wishes of the Cabin's owner, after she had expressed concern about causing a fire, because she felt pressured by the employee. (Exh. I at 55:4-60:9.) Each of the foregoing is known because witnesses have testified to these facts under oath, and because no witness has contradicted them.

---

[1]  "Exh." herein refers to Exhibits to the concurrently-filed Declaration of Patrick C. Bageant.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

1

It is also known that, the day before, on the evening of July 19, 2020, one of the Cabin's owners – Mr. Rusty Brace – undertook to treat the deck with an oil-based stain sold under the brand "Penofin." (Exh. H at 14:25-15:21.) According to the product's literature, the stain should have been dry to the touch within 12 hours if used according to the label. (*See* Exh. A at 112. (Technical Data)) However, by Mr. Brace's testimony, he applied far more stain to the deck than the label recommended because the wood seemed to soak it up. (Exh. H at 70:9-23.) By the testimony of he and his wife, pools of wet, sticky, uncured oil remained on the deck the next morning when he departed the Cabin site by airplane. (Exhs. H at 26:13-25; I at 25:9-24.) Indeed, all of the evidence indicates that too much Penofin oil was applied: the Penofin can found on site after the fire was empty by a volume that vastly exceeded the capacity of oil the deck required. (Exh. B at 5-6, ¶ 25.) Three rags, which Mr. Brace, his wife, and their son had dirtied in attempts to clean up the wet oil were described in detail during witness depositions, and accounted for after the fire.[2] (*See, e.g.*, A at 65 (IMG_8864).) These facts also are known because witnesses have testified to them under oath, and no witness has contradicted them.

It is also known that as Penofin oil evaporates, it emits xylenes and other vapors that are highly flammable when mixed with oxygen. (Exh. C at 5-6.) It is known that temperature affects this mixture and its volatility, and the best available weather data indicates on that July 20, 2017, the ambient temperatures at the Cabin were in exactly the right range to create an explosion. (*Id.*)

The Plaintiffs' theory of this case is described in their Complaint: Mr. Brace used a paint roller to apply Penofin oil to the deck – large quantities were delivered and excess flowed through, and was lost to, expansion gaps between the deck boards – such that it remained wet by the time the hottest part of the next day arrived. (*See id.;* ECF No. 1 at ¶ 13.) During that day, flammable

---

[2] Defendant's strident effort to describe the three rags as "unaccounted for" (*e.g.*, Mem. at 9) is dramatic, but not accurate. One rag was found in the woods near the other cabin. (Exh. A at 65 (IMG_8864).) The other two were placed in a metal fire pit away from the cabin next to two cords of firewood that took embers, caught fire, and burned alongside the Cabin. (Exh. I at 34:8-35:7; Exh. H at 83:5-84:4). That 'accounts for' the rags' location.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

2

vapors from the evaporating oil accumulated beneath the deck, and – while they were accumulating – the Defendant's employee ignited a propane flame to the refrigerator atop the deck. (*See* ECF No. 1 at ¶¶ 20-21.) It was only a matter of time until the flammable vapors reached the standing flame and, at approximately 4:00 PM, that is exactly what happened. (*Id*.)

### III.    PROCEDRUAL HISTORY

Well before filing this Complaint, the Plaintiffs hired three investigators to determine the cause of the fire. (*See* Exhs. A-C.) Their primary fire cause-and-origin investigator, Mr. Michael Koster, visited the scene, processed evidence, and conducted an investigation that is too extensive to recite but that is described in his 145-page report. (*See* Exh. A.) Mr. Koster concluded that the cause of the fire was the chain of events described above. (*Id*. at 20.)

To confirm this opinion, the Plaintiffs also hired Mr. Richard Mumper, an engineer, to examine the propane refrigerator and other appliances and confirm no electrical fault or similar malfunction could have contributed to the fire. (*See* Exh. B.) He was able to do so. (*Id*. at 10-11.) Plaintiffs also hired Mr. Douglas Byron, a chemist, to examine samples of the remaining Penofin oil and provide expertise as to what conditions could create combustion. (Exh. C.) His work confirmed that the standing propane flame and evaporating xylene vapors would have combusted given the conditions on scene. (*Id*. at 6.)

Plaintiffs then filed this lawsuit alleging that the Defendant's employee's decision to light the propane refrigerator in the presence of wet, flammable oil was negligent. (*See* ECF No. 1.)

The parties made their initial disclosures on October 25, 2019, and all discovery closed on February 28, 2020. (ECF Nos. 6, 13.) This case was set for trial on June 29, 2020 but, at Defendant's request, trial was continued until October 19, 2020. (ECF No. 23.)

In the interim, the case was transferred from the Honorable Judge Robert J. Bryan to this Court (ECF No. 26) and – once again at Defendant's request and with Plaintiffs' reluctant stipulation – trial was continued to January 11, 2020 (ECF No. 32).

The pending Motion by Defendant (ECF No. 34) now challenges the admissibility of portions of Mr. Koster's and Mr. Mumper's testimony.

---

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.   LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a court's inquiry into admissibility under Rule 702 is a flexible one. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (citing *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)). In this context, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted). Thus, a court's role is to determine whether sufficient facts exist to support the witness's conclusion, "not whether one party's version of the facts should be credited." *United States v. Idaho Cty. Light & Power Coop. Ass'n*, *Inc.*, No. 3:17-CV-00391, 2020 WL 603478, at *10 (D. Idaho Feb. 7, 2020) (quoting *Allstate Ins. Co. v. Hugh Cole Builder, Inc.*, 137 F. Supp. 2d 1283, 1289 (M.D. Ala. 2001)).

## V.   ARGUMENT

Defendant's Motion should be denied. Plaintiffs' witnesses – Mr. Koster and Mr. Mumper – each offer opinions that are relevant and helpful to the factfinder, based on sufficient facts and data, and rooted in judicially-recognized methodologies. Defendant's arguments to the contrary rely upon misunderstandings of the opinions, or the legal rules that govern their admissibility, or both. The Court should not exclude any of the testimony Defendant attacks.

---

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

4

### A.     Testimony of Mr. Michael Koster.

Mr. Koster is Plaintiffs' testifying expert as to fire cause and origin. (Exh. A at 2.) His opinions are admissible under Rule 702 and *Daubert* because it is helpful and relevant to the trier of fact (Rule 702(a)), is based upon sufficient facts or data (Rule 702(b)), is the product of reliable principles and methods (Rule 702(c)), and because Mr. Koster has applied those principles and methods reliably to the facts of the case (Rule 702(d)). Of note is that portion of Defendant's Motion addressing Mr. Koster contains not a single citation to these statutes or to any cases, but as best can be determined Defendant appears to challenge the sufficiency of the facts upon which Mr. Koster relied pursuant to Rule 702(b), and the reliability of his principles and methodology, pursuant to Rule 702(c).[3] Neither argument has merit.

#### 1.     Mr. Koster's Opinion and its Bases Are Admissible.

Mr. Koster's conclusion as to the cause of the fire in this case is straightforward: the most probable cause of this fire was contact between flammable vapors from a recently-stained deck and the standing pilot flame to a propane refrigerator located atop that deck. (Exh. A at 22.[4]) He based this conclusion on "the data, forensic analysis, and engineering analysis" that he recited and described and analyzed extensively in his written disclosure. (*Id*.)

Although he relied upon many facts, and considered many more, the primary facts supporting his opinion are these. First, statements of witnesses with personal knowledge and other evidence indicated that "copious amounts" of flammable, oil-based stain had been applied to the deck just the day before, and that it had seeped through expansion gaps in the decking and into an enclosed "void space" below, where it began evaporating. (*Id*. at 21.) Second, the best available weather data indicated that this evaporation produced vapors. (*Id*.). Third, chemical

---

[3] The Defendant does not dispute that Mr. Koster's testimony is relevant under Rule 702(a) – i.e., its Motion does not deny that Mr. Koster's testimony goes to a "fact at issue" for the jury.

[4] "I concluded that the most probable cause of this fire loss was a result of the ignition of the accumulated flammable vapors associated with the Ultra-Premium Penofin Penetrating Oil Finish (Brazilian Rosewood Oil). The ignition sequence was identified as being the pilot light from the propane refrigerator." (Exh. A at 22.)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

5

analyses conducted by a separate qualified expert indicated that, as the vapors mixed with oxygen in the air, a highly flammable gas mixture resulted. (*Id.*; *see also* Exh. C at 5-6.) Fourth, statements of witnesses with personal knowledge indicated that, at the time of the fire's inception, a propane refrigerator was located on the deck and the refrigerator included a standing pilot flame that had been lit shortly before the fire occurred. (*Id.*) Those facts, combined with Mr. Koster's specialized knowledge, experience, and expertise informed his professional opinion: that the propane pilot flame ignited flammable vapors from the deck.

Under Rule 702(b), and the Defendant's own case law, the foregoing facts are – by themselves – "sufficient" to admit the opinion he offers. (*See* Mem. at 12 (citing *Primiano*, 598 F.3d at 566 ("Where the foundation is sufficient, the litigant is entitled to have the jury decide upon the experts' credibility, rather than the judge." (internal quotation omitted))).) But Mr. Koster considered far more than just those primary facts: his conclusion also considered "a complete excavation of the fire scene, arc mapping, reconstruction, evidence collection, forensic testing, sample analysis, document review, and calculations" and "a complete analysis of the fire scene, heat oxidation patterns, fire movement patterns, and overall mass loss affecting the remains of the structural members, a review of the video footage, photographs, review of all interviews and transcripts, and a complete review of all the data provided" to his investigative firm. (Exh. A at 12-12, 20.)

After collecting this material, and after reviewing the opinions of other qualified experts, Mr. Koster applied the NFPA 921 standard for fire investigation, which is a well-known, well-tested, and judicially approved method.[5] Using that methodology, which has been repeatedly ruled a "reliable principle[] and method[]" under Rule 702(c), Mr. Koster tested alternative

---

[5] *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646, 653 (D. Kan. 2003) ("The 'gold standard' for fire investigations is codified in NFPA 921, and its testing methodologies are well known in the fire investigation community and familiar to the courts."); *see also Idaho Cty. Light & Power*, 2020 WL 603478, at *7 (collecting cases); *Schlesinger v. United States*, 898 F.Supp.2d 489, 504 (E.D.N.Y. 2012) (same); *Russ v. Safeco Ins. Co.*, No. 2:11-cv-195, 2013 WL 1310501, at *24 (S.D. Miss. Mar. 26, 2013) (same).

---

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

6

theories, sought to disprove his own hypothesis, considered competing theories, and ultimately concluded that his theory was supported and defensible in light of all of the evidence. Because Mr. Koster correctly applied a reliable methodology to the facts of the case, it resulted in an admissible opinion under Rule 702.

1.   Mr. Koster's Facts and Data Under Rule 702(b).

Although Defendant's Motion attempts to challenge the sufficiency of the facts and data informing Mr. Koster's opinion (Mem. at 14), it almost entirely ignores the primary facts that Mr. Koster relied upon (i.e., the presence of flammable vapors and a burning pilot flame, combined with technical data about how the two combine to form fire, and the absence of alternative explanations). (*See id*.) The United States Supreme Court's analysis in *General Electric Company v. Joiner*, 522 U.S. 136, 137 (1997), shows why Defendant's failure to address these facts is fatal to its Motion. In *General Electric*, a party challenged an expert on the ground that epidemiological studies upon which the expert expressly relied were too unlike the facts of the case to be "sufficient" evidence. (*Id*.) To reach its conclusion, the Court – unlike the Defendant here – focused its eye on the specific evidence the expert actually relied upon. (*Id*.)

Here, Defendant's Motion does not bother itself with that labor. Instead, the Motion attempts to divert attention to specific, tangentially-related facts – facts upon which Mr. Koster did not principally rely – and then argues they are amenable to more interpretations than just Mr. Koster's. (*See* Mem. at 14.) This attempt to challenge Mr. Koster's opinion based upon facts that he did not rely upon does not go to the relevant test under *Daubert* and *General Electric*, which is the test that matters under Rule 702(b). (*See also* Fed. R. Evid. 702, advisory committee notes (2000 proposed amendment).)

This mistake in analysis is why, instead of tackling the meat of the issue (i.e., Mr. Koster's affirmative opinion about the standing pilot flame and highly flammable vapors), Defendant's lead argument instead focuses on "heat oxidation patterns." (Mem. at 14.) Defendant admits that such patterns are consistent with Mr. Koster's opinion, but asserts they are also consistent Defendant's own, competing theory about the wind that day. (*See id*.)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

7

Defendant's point is that although heat oxidation patterns tend to support Mr. Koster's opinion, they may also support other inferences. (*See id*.) This factual dispute about whether multiple interpretations are, or are not, reasonable is irrelevant to the legal inquiry in Rule 702 and *Daubert*'s sufficiency test. The Court's gatekeeping role is to determine whether sufficient facts exist to support the conclusion Mr. Koster has reached – not to announce "whether one party's version of the facts should be credited." *Idaho Cty. Light & Power*, 2020 WL 603478, at *10 (quoting *Allstate*, 137 F. Supp. 2d 1289). The facts upon which Mr. Koster relies are sufficient to admit his opinion. To the extent Defendant's preferred factual inferences somehow undermine the strength of that opinion (which they do not), *Daubert* itself explains that the correct tool for Defendant to use is cross-examination before the trier of fact, not legal arguments under Rule 702. *See Daubert*, 509 U.S. at 596 (instructing that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of resolving factual disputes about the weight of evidence.).

Defendant's next set of arguments suffers the same defect. The Motion again ignores the actual basis of Mr. Koster's opinion and instead discusses "fire movement patterns" and "overall mass loss," which it criticizes as "the same thing" as heat oxidation patterns. (*See* Mem. at 14.) Repeating the reasoning discussed above, Defendant again concedes that although these facts are consistent with, and supportive of, Mr. Koster's opinion, they also might be interpreted to support Defendant's separate set of theories about wind. (*Id*.) Again, the apparent fact that Mr. Koster weighs and interprets the evidence differently than the Defendant makes a disagreement about the weight of evidence, but it does not make Mr. Koster's opinion inadmissible as a matter of law under Rule 702. *See Daubert*, 509 U.S. at 596.

Defendant next turns to "review of video and photos" and asserts that Mr. Koster's opinion should be inadmissible because none of the available photos and videos show the fire while it started. (Mem. at 15.) It is true that there is no imagery of the fire at the time and place of ignition – if there were, there would be little need for opinion testimony. That the photos and videos cannot be relied upon for certain material facts (because they don't contain them) does

PLAINTIFFS' OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

8

1   not speak to whether the facts Mr. Koster <u>did</u> rely upon are legally sufficient under Rule 702.

2   Those facts – the presence of flammable vapors, the standing pilot flame, and the immutable

3   laws of physics and fire chemistry – are the ones that matter in this *Daubert* Motion. *See General*

4   *Electric*, 522 U.S. at 137 (testing the actual facts upon which the expert relied). Defendant is free

5   to attempt to argue that the photo and video evidence somehow undercuts the weight of Mr.

6   Koster's opinion, but weight is not admissibility – any argument along these lines is properly

7   addressed to the jury. *Daubert*, 509 U.S. at 596.

8        Defendant's next argument – about statements in transcripts and interviews (Mem. at 15)

9   – suffers the same defect. It is true that Mr. Koster testified that the deposition transcripts of three

10  first responders (Mr. Pyle, Mr. Rauch, and Mr. Gamez) did not affirmatively support his theory

11  as to the exact location of the fire's origin. (Exh. E at 61:14 -62:4.) But it is also true that Mr.

12  Koster did not feel they <u>dis</u>-proved it, either – the building itself was engulfed in fire when the

13  responders arrived and on specific point-of-origin their testimony simply was not helpful. (Exh.

14  E at 111:17-112:6.) However, their testimony did help confirm ancillary facts about the wind

15  and the relative air pressure around the Cabin during the fire. (*Id*. at 112:3-25.) Defendant's

16  assertion that Mr. Koster's opinion is inherently unreliable because the responders' testimony

17  neither confirmed nor dis-confirmed his theory misses the entire thrust of the sufficiency analysis.

18  *See General Electric*, 522 U.S. at 137 (testing the facts upon which the expert relied, not facts

19  upon which he did not rely.) Defendant's arguments about other facts (or their absence) do not

20  address that test, and are not sufficient to carry its Motion. (*Id*.)

21

22       The Motion's only attempt to address the true basis of Mr. Koster's opinion is in its

23  discussion of "review of data." (*See* Mem. at 15-6.) However, even that effort misapplies

24  *Daubert*: it again improperly urges the Court to make factual findings rather than evaluate the

25  basis of testimony. Although Defendant does acknowledge the substance of Mr. Koster's opinion

26  (i.e., volatile vapors adjacent to a standing, burning flame), Defendant does not explain why

27  those facts are not sufficient on their face. Instead, Defendant attempts to simply assert that the

28  supporting facts do not exist: Defendant argues that if applied in the proper amount, the oil would

---

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

1   have been dry to the touch in 12 hours, yet the fire occurred approximately 20 hours after the

2   stain's application. (*See id*. at 15.) The implication is that no volatile vapors could have been

3   present. However, as Mr. Koster explained, the oil here was not dry in 12 hours because the

4   proper amount of oil had not been applied – excessive amounts were applied, which lengthened

5   the drying time. (Exh. A at 16, 21.)

6        To rule in Defendant's favor here the Court would have to resolve a factual dispute,

7   which it should not attempt. First, factual disputes like these are not amendable to resolution on

8   a *Daubert* motion. *Primiano*, 598 F.3d at 565 (trial court is "a gatekeeper, not a fact finder"

9   under *Daubert*'s standard). Second, the ruling would turn out to be wrong: the Defendant's

10  proposed finding is contrary to literally all of the evidence as to how much stain was present and

11  how wet the deck was in the 20-plus hours after the stain was applied. Both Plaintiffs testified

12  that Mr. Brace applied more stain than the label recommended, and the physical evidence

13  confirms this. The Penofin product's label shows that approximately 1.5 gallons was the proper

14  amount of stain for the 500-square-foot deck, yet Mr. Brace had applied at least 2.5 gallons –

15  66% too much – based upon the empty Penofin can at the fire scene. (Exh. B at 9, ¶ 25.) Mrs.

16  Elosu also testified that the deck was "wet" throughout the day leading up to the fire, and that

17  guests to the Cabin avoided the touching deck for that reason. (Exh. A at 46:11-47:9.) As to

18  evidence that only the proper amount of Penofin was applied – which is the finding the Defendant

19  asks the Court to make – there is exactly none.

20       Similarly, Defendant's misplaced arguments about the weather (*see* Mem. at 16

21  (discussing "ambient temperature")) fare no better than the foregoing. It is true that site-specific

22  weather for the Cabin on July 20, 2017, is not available to the parties in this case. That's not

23  particularly remarkable – the east deck of Pistol Creek Ranch's Cabin 16 did not feature a NOAA

24  weather station. What was available to the parties and to Mr. Koster, however, was weather data

25  from Donnelly, Idaho (approximately forty miles away and similar climate), and Boise, Idaho

26  (approximately 94 miles away and similar climate). (*See* Exh. A at 114-127.) It was reasonable

27  for Mr. Koster to consider that data – indeed, Defendant's suggestion to the contrary borders on

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

10

disingenuous in that its own expert relies upon identical regional weather data from McCall, Idaho. (Exh. D at 3 (citing "historical weather data from McCall").) This data shows weather conditions that would create a flammable environment. (Exh. C at 5-6.) Mr. Koster's opinion that those weather conditions were present (i.e., his view that on June 20, 2017, the east deck of Cabin 16 was not a stunning meteorological aberration or departure from the weather of the entire region) is admissible because it is supported by evidence.

Defendant's final argument about sufficiency of evidence (*see* Mem. at 17) fails because it confuses the sufficiency of facts and data under Rule 702(b) with the Rule's test for methodology under Rule 702(c). Defendant argues that Mr. Koster's opinion is hypothetical or a "working hypothesis" because his methodology included attempts to identify all possible causes for the fire and then try to disprove them, one by one, until only the theory most consistent with the facts and data survived. (*See* Mem. at 17.) Conflating Rules 702(b) and 702(c), Defendant asserts that a reliable method of proof requires more than the absence of evidence and argues that Mr. Koster's statements about what "could" have happened should not be admitted. (*Id.*) Defendant cites exactly no propositions of law for this argument (*see id.*) because there is no such law. Every opinion is – by definition – a statement of what could be, and every opinion is – by definition – hypothetical in that sense. That is the nature of opinion testimony.[6] The admissibility question is different; it is whether the opinion is based upon facts and evidence that are sufficient. Fed. R. Evid. 702(b). Here, that is the case: the chemical properties of Penofin oil and the explosive nature of its vapors, the presence of a standing flame, and the best available data about the weather, all combined with a court-approved methodology (i.e., NFPA 921 and its instruction to test and attempt to refute all potential causes of a fire) meet that test. Defendant appears to disagree with Mr. Koster as to what facts deserve extra weight, and what should be

---

[6] That is also why Defendant's expert leans repeatedly on words like "possibly." (Exh. D at 7.)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

11

ignored or treated as uncredible, but those disagreements are for the jury. They are not pertinent under *Daubert*'s instructions for applying Rule 702.

> 2.    Mr. Koster's Principles and Methods Under Rule 702(c).

In addition to relying upon sufficient evidence, Mr. Koster also correctly applied reliable principles and methods pursuant to Rule 702(c). Mr. Koster's fire investigation methodology was NFPA 921 – literally the "gold standard." *McCoy*, 214 F.R.D. at 653 ("The 'gold standard' for fire investigations is codified in NFPA 921, and its testing methodologies are well known in the fire investigation community and familiar to the courts.")); *see also* (Exh. A at 13). Defendant's Motion makes passing reference to Mr. Koster's methodology in apparent criticism, but the Motion does not even mention the NFPA, section 921 or its nationally-recognized standard. (*See* Mem.) The NFPA standard and Mr. Koster's methodology are clearly admissible in, and are regularly-admitted by, federal courts across the country – including this District. *See Idaho Cty. Light & Power*, 2020 WL 603478, at *7 (collecting cases); *Schlesinger*, 898 F.Supp.2d at 504 (same); *Russ*, 2013 WL 1310501, at *24 (same). Mr. Koster's testimony is thus based on mythology that meets Rule 702(c) as interpreted by *Daubert*.

**B.    Testimony of Mr. Richard Mumper.**

Defendant's criticisms of Plaintiffs' testifying expert on fires involving appliances – Mr. Mumper – also lack merit. The arguments ignore the well-established law that one expert may rely on another, and confuse legal versus factual opinions.

> 1.    Mr. Mumper's Testimony is Admissible Under Rule 702.

Mr. Mumper offered three primary opinions pertinent to this case, based upon the evidence he reviewed. The first was that the pilot flame to the refrigerator ignited flammable Penofin vapors. (Exh. B at 10 ("the fire was caused by the ignition of a known flammable liquid and vapor by an open flame located at the recently lit pilot of the deck refrigerator.").) Second, he opined that the cause of the fire was not an electrical malfunction at the Cabin. (*Id.* ("there was no evidence discovered to date to suggest that the fire occurred due to a malfunction involving another appliance in the incident cabin, including the electrically powered

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

12

1    electric/propane refrigerator in the kitchen.").) Third, he concluded that the fire was not caused

2    by spontaneous combustion of rags or other material. (*Id.* ("the opinions set forth by others that

3    the fire was caused by rags piled on top of the deck lack substantiating evidence.").)

4           Defendant's Motion attempts to argue that Mr. Mumper's first opinion – regarding the

5    cause of the fire – should be excluded but Defendant does not explain what portion of Rule 702

6    it thinks requires that ruling – in fact, the Motion does not identify a single legal authority for

7    <u>any</u> portion of its discussion of Mr. Mumper. (*See* Mem. at 17-18.) Although the Motion cites

8    no legal standard, it appears to argue either that Mr. Mumper is inherently unqualified to hold an

9    opinion as to how the fire could have ignited, or that Mr. Mumper should have considered

10   additional evidence. Neither has merit.

11          Mr. Mumper is clearly qualified. To the extent the Motion attempts to imply otherwise,

12   it does not identify any supporting facts and – more importantly – it ignores the facts that do

13   show Mr. Mumper is qualified. Over the last 15 years Mr. Mumper has investigated or

14   participated in investigating an average of 400-500 fires per year. (Exhs. B at 8; F at 8:10-17.)

15   He holds a bachelors' degree in engineering and two master's degrees, with honors, and is

16   licensed and certified as an engineer in multiple states. (Exh. B at 14-15.) He is the President and

17   Chief Executive Officer of the Larry Rohrer Investigations firm, which has specialized in fire

18   cause and origin investigations for over 25 years. (*Id.*) He also owns Richard Mumper &

19   Associates, which specializes in mechanical equipment, product failure, and accident

20   investigation, as well as fires involving appliances (which this was) and causation analysis. (*Id.*)

21   He consults for other firms providing similar work and in the past nine years he has offered

22   testimony 20 times. (*Id.*) There is no serious argument that Mr. Mumper is not qualified to apply

23   or offer his specialized knowledge and expertise pursuant to Rule 702.

24

25          Defendant next attacks Mr. Mumper's laboratory analysis as allegedly not supportive of

26   <u>Mr. Koster</u>'s hypothesis that the fire started on the north deck. (Mem. at 18.) Specifically,

27   Defendant calls attention to deposition questioning regarding paragraphs 41-44 of Mr. Mumper's

28   expert disclosure, which describe his inspection of the propane tank and appliances found at the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

13

scene of the fire. (*See* Exh. B at 9-10.) Based upon those inspections, Mr. Mumper concluded, "There was no evidence noted that indicated any one of the three badly fire damaged appliances caused the fire." (*Id*. at 11.) Mr. Mumper was thus explaining his findings about what did <u>not</u> cause the fire. The deposition answer that Defendant complains of (i.e., that these findings tended to rule out some causes for the fire but were not direct evidence of what <u>did</u> cause the fire) was accurate, precise, and utterly irrelevant to the argument Defendant attempts to make.

Defendant next argues that – in its view – Mr. Koster did not rely upon Mr. Mumper's analysis of the physical evidence, therefore, Mr. Mumper's analysis is unhelpful. (*See* Mem. at 19.) First, that is factually wrong. Even Defendant admits that Mr. Koster and Mr. Mumper discussed Mr. Mumper's analysis of the physical evidence. (Mem. at 18 ("Koster, testified that he never got a report from Mumper regarding his engineering analysis, but did have a conversation with him.").) As Mr. Mumper explained, the two see each other or talk "once or twice a week" at fire investigations and have a close working relationship. (Exh. F at 11:11-13.) Further, in sections of the deposition that Defendant omits from its Motion, Mr. Koster explains that he consulted with Mr. Mumper specifically to obtain Mr. Mumper's expertise and opinion, and that the two communicated about it regularly. (Exh. E at 102:14-20.)

Second, Defendant's argument appears to confuse the testimony the two experts offer. Mr. Koster will testify as to the fire's cause and origin (i.e., a standing pilot flame awash with flammable vapors). (*See* Exh. A.) Mr. Mumper will testify as to what did <u>not</u> cause the fire (e.g., an electrical fault or appliance malfunction) and he will offer evidence that makes it more likely that Mr. Koster's opinion about what <u>did</u> cause the fire is correct. (*See* Exh. B.) Taken to together, this testimony makes facts-at-issue in this case (e.g., the fire's cause) more probable and is – by definition – pertinent and appropriate for the jury. *See* Fed. Evid. 702(a).

2.    <u>Mr. Mumper Does Not Offer Inappropriate Legal Conclusions or</u>
<u>Factual Statements.</u>

At the threshold, Plaintiffs object to all of this argument, and the remaining arguments in Defendant's Memorandum, because they are contained in pages that Defendant filed in excess

---

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

of the Local Rules' page limit and without leave. LCR 7.1 (requiring "express leave of the Court which will be granted only under unusual circumstances.").

The arguments fail on the merits at any rate. Defendant complains that Mr. Mumper has improperly offered legal or factual statements that ought to be excluded (*see* Mem. at 19-21), but Defendant's own cases show otherwise. In *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008), which Defendant relies upon, the district court correctly excluded "legal conclusions" from an expert because the statements functioned to improperly instruct the jury on the law. The expert had made statements like:

- In acting as a Consignor's agent, Cass has no greater rights than the Consignor would have, except as may be modified by contract between Cass and Nationwide.

- ... [A] primary duty of the Consignor, as the Account Debtor, and therefore of Cass as the agent of the Consignor, is to pay Nationwide, as assignee of the Accounts in which it has a security interest, and concerning which it has received a Notification.

- Once a Cass-Consignor has received a Notification from Nationwide, its duties, and that of Cass, as its agent, are clear.

Such statements obviously were legal conclusions – if admitted they would amount to jury instructions from a witness – and were properly excluded. (*Id.*) That is not the same, however, as statements of fact that also have legal effect.[7] Defendant's own case states explicitly that such statements are admissible. *See Nationwide*, 523 F.3d at 1059 ("[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." (citation omitted)). The statements by Mr. Mumper that Defendant complains of fall well on the permissible side of *Nationwide*'s line:

- Mem. at 20: "the fire did not occur due to the actions or inactions on the part of the Brace family." Defendant asserts that this is a legal conclusion (*id.*) but that is wrong. Whether some action caused a fire is a question of fact, not law. Whether – if established – that fact has

---

[7] Or, put another way, statements of fact that are material to a claim or defense – i.e., evidence.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

HOLLYSTONE LAW
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

15

legal consequence is a question of law. *See Nationwide*, 523 F.3d at 1059 (explaining distinction). Nothing in Mr. Mumper's statement is an assertion of what the legal consequences might be, and nothing characterizes the law in any way.

- Mem. at 20: Mr. Mumper's statement that the fire "was not caused by rags" is equally unobjectionable. He owns a firm that specializes in fire cause and origin, and he is qualified to share his expertise as to whether the rags in this case could start a fire. The weight of that statement is for the jury, and Mr. Mumper has nothing to offer about its legal effect.

- Mem. at 20: Mr. Mumper's statements that the Ranch employee "was familiar with the safety requirements" and "knew or should have known the dangers of lighting a pilot light" also are unobjectionable under *Nationwide*. They are based upon evidence that the employee was a professional propane supplier and on information made available to the employee (including written warnings on the Penofin can label). (*See* B at 10.) These are facts, not legal conclusions.

Finally, Defendant criticizes Mr. Mumper for relying in part on Mr. Koster. (Mem. at 21.) It takes issue with Mr. Mumper's statement that, "had [the Ranch employee] not introduced an open flame by . . . lighting the deck refrigerator pilot, the vapors from the penetrating oil on the deck would not have ignited the fire," on the alleged ground that in making this statement Mr. Mumper relied in part upon things he learned from Mr. Koster. (*Id.*) There is nothing wrong with that: the Federal Rules permit one expert to rely upon another. Indeed, in fire cases, experts typically do. *Idaho Cty. Light & Power*, 2020 WL 603478, at *11 (Cole's reliance upon Forth's report is not a valid basis for excluding his testimony); *Columbia Grain, Inc. v. Hinrichs Trading, LLC*, No. 3:14-CV-115, 2015 WL 6675538, at *4 (D. Idaho Oct. 30, 2015) ("an expert is permitted to rely on the opinion of another expert"); *Peerless Ins. Co. v. Marley Engineered Prods. LLC*, No. 05-CV-4848, 2008 WL 7440158, at *6 (E.D.N.Y. June 12, 2008) ("Galler and Eagar were entitled to rely on LeBow's findings with respect to cause and origin. Experts in fire cases often rely upon the observations of other experts in reaching their conclusions.").

### C.    Defendant's Timeliness Arguments Fail.

Defendant's final set of complaints – again, contained in excess pages filed without leave – pertain to supposed untimeliness. (*See* Mem. at 22). They have no merit and should be rejected.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

16

To begin, the substance of Defendant's complaint is not actually *Daubert* or Rule 702. Rather, it is what Defendant characterizes (incorrectly) as a deviation of the discovery timeline and (alleged) prejudice. (*See* Mem. at 22.) This complaint is thus a discovery complaint, and the deadline for raising such matters has long, long passed. (*See* ECF No. 13 (Scheduling Order) at 1.) More fundamentally, Defendant's argument fails on its own terms, because it boils down to this: (a) six days after Defendant's expert's deposition, and before the discovery cut-off, the Plaintiffs produced computer model evidence relevant to a theory newly-announced by Defendant's expert during deposition; and (b) the Defendant should be allowed to argue that theory without the hassle of reckoning with the Plaintiffs' evidence. The upside-down nature of this argument is highlighted by this fact: the Plaintiffs produced this evidence only because the Defendant's own expert testified that it would be probative and helpful in examining the case.

        1.    Mr. Mumper's Computer Modeling is Admissible.

Although this argument by Defendants is an untimely discovery motion disguised as a "*Daubert*" challenge, the timeline of discovery and disclosures shows that Defendant's complaints would have no merit even if properly raised at the appropriate time.

On January 10, 2020, the parties made their initial expert disclosures pursuant to the then-operative case schedule. (ECF No. 13 at 1.) Among those disclosures by Plaintiffs were:

- Opinions from Mr. Koster about events on the day of the fire, including cause-and-origin, winds, and the relationship between the weather and the fire. (Exh. A.)

- Opinions from Mr. Mumper about the physical and mechanical condition of evidence on scene, including the refrigerator and electrical system at the Cabin. (Exh. B.)

- Opinions from Mr. Byron about the physical and chemical properties of the Penofin oil used on the Cabin's deck, and the effect of the ambient environment upon it. (Exh. C.)

Each of these areas of testimony, taken together, lead to the conclusion that the propane refrigerator's standing pilot flame ignited flammable vapors on the deck. They also lead away from the conclusion that anything else could have caused the fire.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

Defendant, meanwhile, made one disclosure. That was Mr. Johnson, who disclosed this wishy-washy set of opinions:

> The material first ignited in this fire was <u>possibly</u> rags or a mop with Penofin Oil on them. The source of the heat of ignition for this fire was <u>possibly</u> spontaneous oxidative heating of the oil soaked material. The act or action which brought them together was <u>possibly</u> improper disposal of the deck finishing waste. This fire is classified as being of <u>accidental</u> origin.

(Exh. D at 7 (emphasis in original).) Mr. Johnson further disclosed that among the bases for his conclusion were the effect of wind upon the fire as it burned. (*Id*. at 7.) He disagreed with the Plaintiffs' three experts on the ground that, "Based on the fire progression pictures as noted and on the strong prevailing south wind at the time of the fire, the refrigerator is ruled out as the source of the heat of ignition for this fire." (*Id*.) Mr. Johnson's report did not address the flammable vapors from the Penofin oil at all. (*See id*.)

On February 19, 2020, the Plaintiffs took the deposition of Mr. Johnson, where he revealed a very different set of opinions. For the very first time, Mr. Johnson offered detailed descriptions of how – in his opinion – the wind would have affected airflow around the structure and its deck, and in particular how it would have carried flammable vapors away from the pilot flame. (Exh. G at 89:11-91:20.) Rather than testifying generally about the "strong south wind" and its effect on the Cabin as it burned, as his report disclosed, Mr. Johnson suddenly professed detailed descriptions of "laminar" and "turbulent" airflow that "deviates directionally," creates pressure differentials, and swirling effects that – according to Mr. Johnson – would tend to refute Plaintiffs' experts' disclosures about flammable vapors before the fire. (*See id*.) The clincher, however, was this admission:

> Q. Okay. If you're going to test this theory of how the wind flows around the structure, how would you go about testing it?
>
> A. I would hire somebody who knows what they're doing.
>
> Q. Okay. Who would you hire? Well, what is the nature of the expertise you would hire?

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

HOLLYSTONE LAW
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

18

> A. I would hire a scientist or an engineer that understands air pressure and air movement and would be able to do that kind of thing.

(*Id.* at 92:11-21.) Mr. Johnson, by his own admission, is not an "engineer" who "knows what they are doing." (*Id.* at 93:4-6.) Mr. Mumper, however, is. (Exh. B at 14-16.) Just six days after Mr. Johnson's deposition, and before discovery closed, Mr. Mumper undertook the very wind analysis that Mr. Johnson indicated would be helpful – indeed, the very analysis Mr. Johnson said he would rely upon – and Plaintiffs promptly produced it to Defendants.

Defendant now complains that this disclosure was "late" (Mem. at 22) but there is no sense in which that is true. The wind model was evidence – not new opinion – produced directly in response to information that Mr. Johnson himself had called for. Plaintiffs made their production <u>before</u> the discovery cut-off, <u>before</u> the depositions of Plaintiffs' experts, and well <u>before</u> their actual deadline under the Federal Rules: even if the disclosure contained a new opinion (which it did not; it contained evidence and, in particular, the exact evidence Defendant's expert said would be most reliable), the disclosure was in response to brand new pre-fire "wind flow" theories Mr. Johnson revealed for the first time in deposition. The Federal Rules permitted Plaintiffs 30 days to rebut or sur-rebut this new disclosure. (Fed. R. Civ. P. 26(a)(2)(D)(ii) ("if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), [the deadline is] within 30 days after the other party's disclosure.").) Plaintiffs' six-day response met that deadline in a way that left no room for Defendant to complain at the time – or now, nine months later.

This is why Defendant's arguments about alleged prejudice are misplaced. This case is at the eve of trial: the Defendant could have objected with a motion back in February – but it did not because it knew that the factual information its own expert had called for was relevant and timely produced. It could have prepared and disclosed a sur-rebuttal or asserted its right to amend Mr. Johnson's opinion in light of Mr. Mumper's wind data – but it did not because it cannot refute Mr. Mumper's math or the data itself. It could have brought this issue to the Court's attention any time between February and now – but it did not because the true objective here is a last-ditch effort to hide facts, not desire to resolve a genuine discovery disagreement.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

HOLLYSTONE LAW
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

19

Defendant's failure to timely address, confront, or identify this (alleged) issue on the merit shows what the Defendant's Motion is: an eve-of-trial gambit to exclude the truth.

Ignition of flammable vapors by the standing pilot flame has always been the Plaintiffs' theory of the case. Details about how the wind would flow around the structure became, as of Mr. Johnson's deposition on February 19, 2020, the Defendant's own response to Plaintiffs' theory. Plaintiffs' disclosure of facts material to Defendant's new position – only six days after Defendant made it known and well before Plaintiffs' deadline to say anything at all – was proper, timely, and relevant. Now, shortly before trial, the Defendant doesn't like what the bare facts show (and have shown since February), but that is no basis to withhold them from the jury.

2.      Mr. Koster's Spontaneous Combustion Experiment is Admissible.

Like computer modeling, Defendant has no serious argument to exclude Mr. Koster's spontaneous combustion experiment. (*See* Mem. at 23.) Defendant criticizes it on the ground that the temperature, humidity, latitude, and altitude of the experiment may have been different than the conditions at the scene and time of the trial (*id*.) – but that all is fodder for cross-examination. To the extent any differences existed, they would go to the weight of the experiment as evidence and not to its threshold admissibility under Rule 702.

## VI.     CONCLUSION

The Court should deny Defendant's Motion to exclude testimony, because the testimony at issue meets the admissibility requirements of *Daubert* and Rule 702.

Dated: November 6, 2020, by:          */s Patrick C. Bageant*
                                      Patrick C. Bageant

                                      HOLLYSTONE LAW
                                      1775 West State Street, No. 286
                                      Boise, ID 83702
                                      Telephone: 208-596-5343
                                      Facsimile: 208-686-8247
                                      email: pbageant@hollystonelaw.com

                                      *Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
*DAUBERT* MOTION
Case No. 1:19-CV-267-DCN

**HOLLYSTONE LAW**
1775 West State Street, #286
Boise, ID 83702
Telephone: 208-596-5343

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I certify that on the date below I caused the foregoing document to be filed electronically with the Court's CM/ECF system, which will cause it to be served upon all counsel of record electronically.

Dated: November 6, 2020, by:          */s Patrick C. Bageant*
                                        Patrick C. Bageant

                                        HOLLYSTONE LAW
                                        1775 West State Street, No. 286
                                        Boise, ID 83702
                                        Telephone: 208-596-5343
                                        Facsimile: 208-686-8247
                                        email: pbageant@hollystonelaw.com

                                        *Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

Case No. 1:19-CV-267-RJB