UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA FERNANDA ELOSU and ROBERT LOUISE BRACE, Individuals, | Case No. 1:19-cv-00267-DCN |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| MIDDLEFORK RANCH INCORPORATED, an Idaho Corporation, | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court are Defendant Middlefork Ranch Incorporated's ("MFR") Motions in Limine (Dkt. 59)[1] and Plaintiffs Maria Elosu and Robert Brace's Motions in Limine (Dkts. 65–67). MFR also filed an objection to one of Plaintiffs' proposed witnesses. Dkt. 69. Within the various submissions are large substantive requests—going to theories of the case or the calculations for damages—as well as smaller objections to various trial submissions. The Court will address many of those issues today, but reserves ruling on some matters that can only be determined during trial.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay,

---

[1] MFR included four motions in limine within one filing. Dkt. 59.

and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons outlined below, the Court will GRANT in PART and DENY in PART both parties' Motions in Limine and will OVERRULE Defendant's Objection.

## II. BACKGROUND

### A. Factual Background

The facts of this case are well known to both parties and the Court will only include a brief recitation here for context.[2]

Plaintiffs owned a cabin, known as Cabin #16, in the Frank Church Wilderness area east of McCall, Idaho. Cabin #16 is located in Pistol Creek Ranch and is a part of the Middlefork Ranch Homeowner's Association.

On July 19, 2017, Brace stained the decks of Cabin #16 with an oil-based stain. Brace, by his own admission, applied too much stain to the decks. On the morning of July 20, 2017, an MFR employee changed out a propane tank and relit the pilot light of an outdoor refrigerator located on the north deck of Cabin #16.

Later that day, Cabin #16 caught fire and burned to the ground.

Plaintiffs assert that MFR—via its employee—was negligent in lighting the pilot light because Elosu had already informed the employee that there was excess stain on the deck. Plaintiffs' theory of the case is that the open flame pilot light combusted the vaporous

---

[2] For a more in-depth factual history, see Dkt. 44 at 2–5.

gases from the deck stain and caused the fire.

For its part, MFR claims there is no evidence to support Plaintiffs' theory—in fact, it claims witness testimony contradicts Plaintiffs' theory. MFR argues further that even if Plaintiffs' theory is to be believed, and the pilot light started the fire, Plaintiffs themselves were contributorily negligent in applying excessive deck stain. MFR believes the evidence will show some other source—a negligently discarded cigarette butt or superfluous rags with oil stain—ignited the fire.

Following various investigations (wherein the cause of the fire was never conclusively determined), Plaintiffs' homeowner's insurance policy paid its policy limits ($450,000) and waived subrogation against MFR.

Plaintiffs eventually filed this lawsuit alleging a single cause of action against MFR: negligence.

### B.  Procedural Background

Two procedural matters will help put today's rulings in context—Judge Robert Bryan's Decision on summary judgment (Dkt. 22), and the undersigned's Decision on MFR's Motion to Exclude (Dkt. 44).

First, owing to the fact that the District of Idaho is in a judicial emergency, a visiting judge—Judge Robert Bryan from the Western District of Washington—presided over this case from its inception through summary judgment. The summary judgment motions filed before Judge Bryan revolved around the calculations of damages—the final element of a

negligence action.[3]

MFR argued that, under Idaho law, the maximum amount of damages Plaintiffs can recover is the "fair market value" of Cabin #16 at the time of the fire, and nothing more. Plaintiffs, on the other hand, argued that, under Idaho law, they are entitled to the costs of rebuilding Cabin #16, and nothing less. Judge Bryan rejected both positions as overly narrow.

After discussing Idaho case law at length, *see* Dkt. 6–10, Judge Bryan concluded:

> Putting all of these leading Idaho cases together, *Farr West*, *Weitz*, *Adams* and *McFarland*, it is difficult to determine a clear, bright line damages rule. The following rules, however, emerge: Damages to property are typically limited to diminution in fair market value. Restoration costs are admissible evidence in determining fair market value and can be the appropriate measure of damages, even if the restoration costs exceed diminution in value, only in exceptional circumstances. Such exceptional circumstances are not limited by the case law, but include such considerations as where the market for the property is difficult to determine, where the property would likely be replaced, valuation by owner for "specific and personal reasons," and, perhaps, the requirements of justice.

Dkt. 22, at 10–11 (citations omitted). As will be explained below, this framework outlined by Judge Bryan will play a role in the Court's resolution of the pending motions and its ruling on what evidence is, ultimately, admissible in relation to the question of damages.

Second—and after Judge Bryan returned this case to the undersigned for trial—the Court held in a January 22, 2021 Decision (the "Decision" or "Court's Decision") that, among other things, Plaintiffs' expert, Michael Koster's testimony should be excluded because it lacked a supporting basis in the record and was speculative. *See generally* Dkt.

---

[3] Said another way, neither side argued the first three elements of a negligence claim—duty, breach, or causation—before Judge Bryan. They instead focused solely on damages.

44. This ruling all but ended Plaintiffs' case. Accordingly, the parties stipulated to dismissal of the case in order to pursue an appeal of the Court's Decision. Dkt. 47.

Ultimately, the Ninth Circuit reversed the Court's Decision, finding that Koster's conclusions should be presented to a jury for consideration. Dkt. 56.

The Circuit, however, did not rule on other matters from the Court's Decision, as those matters were not raised on appeal. The Court will re-iterate those separate holdings as they also impact some of the parties' Motions in Limine.

### III. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted), "a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

MEMORANDUM DECISION AND ORDER - 5

## IV. ANALYSIS[4]

### A. Defendant's Objection (Dkt. 69)

*1. Objection to proposed witness Quinn Spaulding: OVERRULED*

On June 17, 2022, Plaintiffs provided a trial witness list to MFR. Included on that list is Quinn Spaulding, a property owner at Pistol Creek Ranch. Spaulding is expected to testify, among other things, about "the costs to rebuild Cabin #17." Dkt. 75, at 2. MFR raises two primary arguments against Plaintiffs calling Spaulding. First, MFR argues Plaintiffs failed to timely disclose him as a trial witness. Second, it contends Spaulding's testimony as to Cabin #17 is irrelevant because Cabin #17 is not at issue. The Court will address each argument in turn.

#### a. Disclosure

MFR begins by explaining that Plaintiffs did not list Spaulding in their preliminary witness list as someone who might testify at trial, but only later identified Spaulding in their final witness list. As a result of this failure, MFR requests that the Court prohibit Plaintiffs from calling Spaulding at all.

Plaintiffs respond that while this is true, it is irrelevant for two reasons. First, Plaintiffs note that both parties listed Spaulding as a potential witness in their initial disclosures more than two years ago, so it really isn't any surprise that he is being called to testify. Second, Plaintiffs explain that they listed Spaulding at this late stage in response

---

[4] For brevity, and due to time constraints, the Court will not reiterate each sides' arguments, as to each individual Motion in Limine, at length. Additionally, the Court's rulings on these motions are interlocutory. Depending on how certain evidence is presented at trial—particularly if the "door is opened" for any particular topic—the Court may reconsider its decision.

to MFR disclosing a previously unknown witness—David Pecora. The Court agrees on both points.

### (i)   Initial Disclosures Listing Spaulding

MFR agreed in reply that Spaulding *was* listed in its initial disclosure as someone who might testify "as to his actions and observations" from the fire on July 20, 2017, and clarifies that it does not object to Spaulding giving testimony on these topics. It maintains its objections to his testimony on other topics on relevance grounds. While the Court will discuss relevance below, the idea that Spaulding's testimony exceeds what was originally outlined dovetails into Plaintiffs' second reason for the belated disclosure—ambush.

### (ii)   Listing in Response to Ambush of Pecora

MFR recently listed David Pecora—current President of MFR—as a witness that would testify in this case. Pecora was not listed in any initial disclosure, was never referenced in any deposition, and has never taken part in any of these proceedings. MFR now states that that he will testify as to a variety of topics including "checking and changing propane," the "operations" of MFR, and "marketing, sales, and values of cabins at the Ranch, including Plaintiffs' cabin #16." Dkt. 71, at 3. Plaintiffs claim this is a true "ambush" situation. This aside, Plaintiffs have not sought to exclude Pecora, but only to enlist Spaulding to testify on similar matters.

Because Spaulding was listed in both parties' initial disclosures as a potential witness, and because MFR only recently disclosed Pecora, Plaintiffs' belated decision to list Spaulding was excusable.

MEMORANDUM DECISION AND ORDER - 7

b.  <u>Relevance</u>

The bigger question is whether Spaulding can testify concerning the costs to rebuild Cabin #17. MFR asserts that the costs to rebuild an altogether unrelated cabin is irrelevant. The Court disagrees.

As mentioned above—and as will be discussed in greater detail below—the calculation of damages in this case is extremely difficult. Not only are there legal nuances on *how* to measure damages, but there are questions on *what* can be utilized as evidence in support of that examination. Pistol Creek Ranch is very remote. This unique situation affects the market value of the properties and any rebuilding costs, as well as the real estate market as a whole, including whether there even is "a market" in the first place.

MFR takes issue with Spaulding's purported testimony as to the cost to rebuild Cabin #17 because it is different in design and value as it relates to Cabin #16. At the same time, however, MFR intends to have Pecora testify to "marketing, sales, and values of cabins at the Ranch, including Plaintiffs' Cabin #16." MFR cannot have an individual testify as to valuation of other cabins and then prohibit Plaintiffs from doing the same.

Frankly, Spaulding's testimony should not be as concerning as MFR makes it out to be. Jurors need not be real estate agents to understand that different properties have different values. Additionally, cross-examination and closing argument (from both parties) can highlight any relevant differences in price, style, timing, location, materials etc. These nuances all go to the weight of the evidence. Nevertheless, this evidence is pertinent, relevant, and material—especially considering the limited *specific* evidence for damages as it relates to Cabin #16 that is available. The jury is going to need all the help they can

MEMORANDUM DECISION AND ORDER - 8

get when determining damages (if they award damages) for Cabin #16. Spaulding can provide some context for that question.

In sum, the Court finds that the "late" disclosure of Spaulding was excusable. Furthermore, the Court finds his testimony relevant.

MFR's Objection to Spaulding Testifying (Dkt. 69) is OVERRULED.

## B. Defendant's Motions in Limine (Dkt. 59)

### 1. Written Expert Reports: GRANTED in PART and DENIED in PART

In its first Motion, MFR notes that expert reports are inadmissible as hearsay and asks that all written expert reports for Plaintiffs' experts—Michael Koster, Richard Mumper, Douglas Byron, and Kenny Pyle—be excluded. MRF specifically calls out a portion of Pyle's report—currently marked as Exhibit 1039—which appears to be a summary of the anticipated costs to rebuild Cabin #16.

Plaintiffs respond in agreement, noting that they have no intention to introduce any of their experts' reports as those experts will be providing live testimony. They do state, however, that Pyle's summary of the costs associated with rebuilding Cabin #16 will be helpful to the jury as a demonstrative exhibit. MFR replies by noting that if Plaintiffs can lay the proper foundation, and if Pyle testifies as to each of the expenses, then his summary of costs could "arguably be a demonstrative summary, but until then, it is simply inadmissible hearsay." Dkt. 80, at 4.

MFR is correct: expert reports are generally inadmissible as hearsay and "an expert report cannot be used to prove the existence of facts set forth therein." *In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999). So, to the extent MFR seeks to exclude

Plaintiffs' experts' reports, MFR's motion is GRANTED.

The Court must separately discuss Pyle's summary exhibit. As MFR recognizes, this document could be a demonstrative exhibit if Pyle testifies as to each item summarized therein. Exhibit 1039 is roughly two pages in length and consists of approximately 19 categories of expenses. Some of those categories have subcategories. It would take some time to go line by line, testifying as to each item—particularly when the details of doing so are largely irrelevant. Given this, the Court will allow Pyle to generally testify as to each category without requiring him to address each and every sub-category, and still allow Plaintiffs to use Pyle's summary of costs as a demonstrative exhibit.[5] Of course, if Plaintiffs ultimately seek to admit Pyle's summary of costs as a demonstrative exhibit, proper foundation will have to be laid via Pyle's testimony. Alternatively, Pyle can simply summarize the amounts, counsel can reiterate those amounts in closing, and the jury can rely on their memories and notes.

This aside, MFR also asserts that the amounts in Exhibit 1039 are for *current* project costs as opposed to what the project would have cost in 2017 immediately after the fire. The Court agrees that this is a relevant concern. However, MFR will have every opportunity during cross-examination to flesh out whether these estimates are current and/or what the difference between past and current costs would be. Any distinctions would

---

[5] For example, Pyle does not need to delineate between exterior and interior doors and windows (subcategories 4510, 4540, and 4550) but can group these in their broader category of "Windows and Doors" (4500). At the same time, however, other sub-categories are critical and should be explained. For example, "Air Travel" is a subcategory of "Preparation Preliminaries." As noted, the only way to get building materials to this remote area is via air. Thus, the air travel fee of $325,000 is worth calling out because of its importance and amount.

go to the weight of the information, not to its admissibility. The portion of MFR's Motion seeking to preliminarily exclude Pyle's summary of costs is DENIED.

2. *Expert Opinions Beyond the Scope of Expertise: GRANTED in PART, DENIED in PART, WITHHELD RULING in PART.*

In its second motion, MFR seeks an order from the Court limiting the testimony of two of Plaintiffs' experts—Richard Mumper and Douglas Bryan. The Court will discuss each witness in turn.

a. <u>Mumper</u>

As part of its prior Decision, the Court made certain findings as to some of Plaintiffs' experts, including Richard Mumper. Dkt. 44. Specifically, the Court held that Mumper could not testify as to matters that were not within his area of expertise. MFR now asks the Court to reinforce that ruling and prohibit Mumper from testifying about anything except mechanical engineering. MFR's request, however, goes too far.

The Court previously determined that Mumper could testify about both mechanical engineering and his evaluations of the propane refrigerator and other appliances from Cabin #16. The Court was hesitant, however, to let Mumper testify as to his opinion of what actually caused the fire. While lengthy, the Court's prior ruling outlined the parameters of Mumper's testimony and is worth repeating. As the Court explained:

> After [outlining his conclusions], however, Mumper goes on to opine that the cause of the fire was the refrigerator pilot light. He bases this opinion on information he gleaned from Brace, Koster, and others. <u>The problem with these statements, however, is that such a conclusion *might* not be within Mumper's area of expertise and/or might lack appropriate foundation.</u> The Court says "might" because, while Mumper is not a fire investigator, he owns a firm that specializes in providing technical and engineering expertise to fire investigators, among other things. <u>Thus, Mumper appears to have sufficient</u>

<u>qualifications and expertise to, generally speaking, opine on such topics.</u> The Court's concern, however, is where Mumper's conclusions came from and whether he was actually asked to form such an opinion in this case.

Dkt. 44, at 19 (italics in original; underlining added).

The Court concluded:

So, while Mumper can surely testify concerning his opinion that "there was no evidence discovered to date to suggest that the fire occurred due to a malfunction involving another appliance" (Dkt. 36-3, at 11), he cannot testify concerning his opinion that "the fire was caused by the ignition of a known flammable liquid and vapor by an open flame located at the recently lit pilot of the deck refrigerator" or that "the opinion set forth by others that the fire was caused by rags piled on top of the deck lack[s] substantiating evidence" *without proper foundation*. *Id.* Again, Mumper is a mechanical engineer, and appears to have been retained to opine on the mechanical issues in this case, not the origins of the fire.

In short, this request is GRANTED in PART and DENIED in PART. Mumper can testify about the tests he ran, his conclusions about those tests, and his opinion that those things *did not* start the fire. <u>Whether he can testify more generally about what *did* cause the fire can only be determined once the Court hears his testimony and determines if the proper foundation has been laid</u> and whether notice was properly given to MFR in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

*Id*. at 20 (italics in original; underlining added). The Court has not changed its ruling since that time. At the current juncture, Mumper can testify as to those topics consistent with his mechanical engineering expertise. Whether he can broaden his testimony to include more "causation" type opinions remains undetermined.[6] And, assuming *arguendo* that his

---

[6] The Court had similar sentiment for what MFR calls Mumper's "Legal Conclusions and Factual Statements." Dkt. 44, at 20. The Court held that Mumper could not testify to matters outside his expertise or that were not part and parcel to his evidentiary evaluations. *Id.* at 21. The Court stated that:

Again, insofar as there is some mechanical engineering opinion that can be derived from any of these events, Mumper can so testify. In addition, <u>if Plaintiffs can lay the appropriate foundation, Mumper could potentially opine on these other topics</u>. That said, it goes without saying that an expert cannot give testimony outside of his area of expertise, cannot

testimony comes in, MFR will have every opportunity to cross-examine Mumper, including by questioning his evaluations and opinions.

b. <u>Byron</u>

Unlike Mumper, this is the first time the Court has been asked to determine the extent of Byron's testimony. While he was mentioned as part of MFR's prior motion,[7] Byron was not actually the subject of any *Daubert* challenge. Plaintiffs assert that MFR is too late to raise such a challenge now. The Court largely agrees.

The Court set a specific "Daubert/Rule 702" Motion deadline for October 23, 2020. Dkt. 33. Defendant filed a motion on that date. Dkt. 34. Byron was not included in that motion. MFR does not deny the fact that it did not bring Byron to the Court's attention before, but asserts now, under Federal Rule of Evidence 702, it would be prejudiced if Byron is allowed to provide expert testimony he is not qualified to provide.

Because MFR has long-since missed the deadline to file a Daubert Motion the Court will not evaluate Mumper's testimony under that standard. Nevertheless, MFR has brought an issue to the Court's attention; thus, it will provide some preliminary commentary to

---

give opinions on legal conclusions, and must support opinions related to unresolved factual disputes with the proper foundation.

Thus, this request is likewise GRANTED in PART and DENIED in PART. Mumper can testify to his mechanical conclusions. He can also testify as to anything he has personal knowledge of, that is supported by his investigation and other appropriate foundation, and was properly disclosed. He cannot testify to other matters. <u>The Court does not know everything Mumper will say during his testimony and thus it will be up to MFR to raise any appropriate objections which the Court can deal with in due course.</u>

*Id.* (underlining added).

[7] Bryon was simply mentioned as having taking part in certain testing exercises with Plaintiffs' other expert—Michael Koster.

ensure Mumper's testimony is consistent with Rule 702.

MFR is correct: experts cannot testify about things outside of their area of expertise. So, to a certain degree, this portion of the request is granted (if granting a request that the parties follow the rules is even necessary). That said, the Court does not know what Byron will say and, therefore, cannot rule on anything specific until it hears his testimony. Thus, the motion is denied at this time and the Court withholds ruling until trial.

In sum, Mumper can testify consistent with the Court's prior opinion. Byron can testify as he plans. MFR can raise any appropriate objections which the Court will address as necessary.

### 3. Untimely Disclosed Materials: DENIED with WITHHELD RULING

Similar to the above, the Court previously held that certain materials were not timely disclosed and must be excluded. MFR asks the Court to reiterate that ruling. But they also ask the Court to broaden its ruling. The Court will not do so at this time.

As part of its prior Motion in Limine, MFR asked the Court to "exclude untimely materials and expert analysis not contained in expert reports, not disclosed in accordance with Court Order or civil rules, and not relied upon as a bases for opinions." Dkt. 34, at 2, 22. MFR went on to list two specific "experiments" it wanted excluded: (1) the combustion testing, and (2) the air flow testing.

The story here, as outlined previously by the Court, is essentially that Plaintiffs produced the above-mentioned experiments two days prior to the discovery cut-off—on February 25, 2020. Dkt. 44, at 22. And while these experiments were performed by experts, Plaintiffs did not produce them as part of supplemental expert reports under Federal Rule

of Civil Procedure 26; they simply sent them to MFR.

The Court held that while the parties could have remedied this issue by using the Court's informal discovery dispute process (and/or requested an extension of the deadlines to accommodate both sides), because that didn't take place, the Court had little choice but to exclude the materials. The Court made this determination not only because MFR did not have an opportunity to review or rebut the experiments, but, more importantly, because the experiments were performed by experts but not properly disclosed. Said differently, the timing was an issue, but the procedural failure is what ultimately caused the Court to exclude the materials in question. Dkt. 44 at 23–24.

Now, MFR wants the Court to reiterate that *everything* produced on February 25, 2020, is excluded from trial based upon the Court's prior Decision. This is something the Court will not do because it was unaware of anything else that may have been produced on that date, and it *did not* rule on any of the items now brought to its attention.

The language in MFR's motion did not indicate there were any other materials at issue besides the combustion testing and air flow testing. The briefing was always in the context of such experiments. Thus, as a threshold matter, the Court *has not* ruled on any other materials disclosed on February 25, 2020, except for the latter two experiments. The Court's ruling on those two topics stands. They were not properly disclosed via Rule 26 supplementation and are thus excluded.

This aside, there is no reason the Court cannot address MFR's request now. MFR seeks to exclude four exhibits produced on February 25, 2020, as untimely and irrelevant. *In addition*, MFR also seeks to exclude new photographs and materials Plaintiffs produced

very recently. The Court will address each set of discovery, considering both timing and relevance, in turn.

a. Other February 25, 2020, materials

At issue here are four exhibits (or types of exhibits): (1) Exhibit 1034 – Weather data; (2) Exhibit 1035 – a refrigerator manual; (3) Exhibits 1038 – a Safety Data Sheet; and (4) Exhibits 1025-1031 – Cabin plans. MFR challenges the timing of Plaintiffs' disclosure as well as the relevance of these materials.

(i)    Timing

As it relates to timing, Plaintiffs posit that while the disclosure of these materials was two days before the discovery cut-off, they were actually not under *any* obligation to disclose them at all. To a certain extent, the Court agrees.

Under the Federal Rules of Civil Procedure, a party must produce materials at three points in time. First, in its initial disclosures—if it is aware of such documents. Fed. R. Civ. P. 26(a)(1). Second, no later than 30 days before trial. Fed. R. Civ. P. 26(a)(3)(B). Third, in response to a relevant document request under Rule 34.[8]

Here, Plaintiffs claim the materials produced on February 25, 2020, were not available at the time of their initial disclosures; they materialized during discovery. Thus, Rule 26(a) does not apply. Plaintiffs posture that because they disclosed these materials more than two years in advance of Rule 26(a)(3)(B)'s 30-day pretrial deadline, there is no

---

[8] The Court also notes that parties have an ongoing duty to supplement disclosures under Rule 26(e). Without getting into a lengthy discussion about the interplay between the various rules and duties, it suffices to simply reiterate that notions of "fair play" in litigation dictate that parties disclose discoverable information and materials as soon as reasonably possible.

harm. The Court agrees. Not only were these materials produced during the discovery window (albeit at the very end), but they were also produced long before the 30-day pretrial deadline. What's more, MFR never sent any document requests to Plaintiffs that would have triggered them to turn these materials over.

In short, Plaintiffs' timing was appropriate. These materials were disclosed well in advance of trial and have not prejudiced MFR.

*(ii)    Relevance*

The more crucial inquiry, however, is whether these materials are relevant and admissible at trial. That is to say, setting aside the issue of timing, MFR could have (and does) move for the exclusion of these materials based upon their lack of relevance and/or the fact that Plaintiffs' experts never stated they actually relied on such materials in forming their opinions.

MFR's latter conclusion is problematic because it is not clear to the Court that Plaintiffs' experts—as opposed to other witnesses—will be the people who try to submit these exhibits into evidence. Thus, at this stage, the Court can only remind the parties that all evidence must be properly supported to come in—whether via expert witness or otherwise.

MFR's former conclusion is more applicable, but, relatedly, cannot be resolved at this time. From the short explanation of the exhibits provided by the parties, it does appear the materials are relevant to the issues in this case. Thus, the Court will not exclude them at this time. However, it remains to be seen whether they will officially be admitted as exhibits. This is dependent on the witness who seeks their introduction and whether they

MEMORANDUM DECISION AND ORDER - 17

can provide relevant foundation. In short, MFR's request to exclude the other February 25, 2020, materials is DENIED at this time.

    b.  <u>Newly disclosed materials</u>

Plaintiffs first point out that while these materials—which consists mostly of photos of Cabin #16—were only recently disclosed (i.e., not with the February 25, 2020, disclosure) such was the case because they were only recently discovered. Plaintiffs also note they shared the photos and other newly discovered materials with MFR more than 30 days before trial, thus negating any "surprise" or "ambush" situation. In sum, the record reflects the evidence could not have been disclosed earlier so it need not be excluded as untimely.

And, as above, the photos appear relevant to the claims at issue in this case. Assuming evidentiary standards are met, the Court sees no reason at this time to exclude Exhibits 1008, 1009, 1011, 1014, 1022, 1025, 1027, 1028, and 1030. Specific objections can be dealt with as they arise.

 MFR's request as to the newly disclosed materials is DENIED at this time.

   *4.*  *Expert Opinion Based upon the Improper Measure of Damages: DENIED*

Finally, MFR asks the Court to exclude expert opinion based on the "improper measure of damages." Dkt. 59, at 4. Hearkening back to Judge Bryan's Decision on summary judgment, MFR states that the proper measure of damages in this case is the diminution of the fair market value of the property. MFR also outlines that Judge Bryan rejected Plaintiffs' argument that the measure of damages is the cost to rebuild the cabin.

This is correct, but there are some nuances that must be fleshed out.

Judge Bryan held that the destruction here qualifies as "permanent damage, but not total destruction," and, as a result, Plaintiffs are entitled to the diminution of the fair market value. Dkt. 22, at 9. That said, one component that can be considered in the "fair market value" analysis is restoration costs. MFR appears to recognize this. It states that the cost to rebuild is relevant and can be considered, but still wants the Court to prohibit Plaintiffs from saying these costs are the actual damages. The Court agrees with this distinction. Plaintiffs cannot say the damages are the costs of rebuilding. They can, however, say that the costs of rebuilding are *part of* the damages because this case presents the unique circumstances outlined by Judge Bryan. In like manner, MFR cannot say the damages wholesale exclude the costs of rebuilding. It can, however, argue those costs should not be considered because there is nothing unique about this case warranting their inclusion in the equation.

In sum, while Plaintiffs continue to persist that their damages are the "restoration costs," this is not entirely accurate. *Ransom v. Topaz Mktg., L.P.*, 152 P.3d 2, 6 (Idaho 2006) ("If land is permanently injured, but not totally destroyed, the owner is entitled to the difference between the fair market value before and after the injury" not restoration costs). Neither, however, is MFR's assessment that Plaintiffs cannot possibly recover anything above the raw loss of market value. *Id*. ("[T]he rule precluding recovery in excess of the diminution in value is not of invariable application.") (cleaned up). Thus, to be clear, the damages in this case are the diminution of fair market value. However, numerous benchmarks, including restorative costs, should be considered when making that

determination.

MFR's Motion is DENIED. Restoration costs are not an "improper measure of damages" in and of themselves thus the Court will not exclude testimony along these lines. The Court will, however, remind the parties that both sides need to treat this issue fairly and in accordance with Judge Bryan's prior ruling.[9]

**C. Plaintiffs' Motions in Limine (Dkts. 65–67)**

*1. California Residency: GRANTED*

In their first Motion, Plaintiffs request that the Court exclude any mention of the fact that they are California residents. Plaintiffs make this motion primarily based upon a perceived negative stigma associated with Californians in the Treasure Valley (and in Idaho in general).

While it may seem like overkill to exclude this minor detail, that by all accounts is irrelevant, Plaintiffs posture that is this exact reason—relevance—that warrants exclusion.

Under Federal Rule of Evidence 401, evidence is relevant only if "(a) it has any tendency to make a fact more of less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Plaintiffs argue the fact that they are California residents does not affect this case in any way.[10] The Court agrees.

MFR first counters that this isn't a big deal and any animus towards Californians can be fleshed out in voir dire. While this is *an* option, it is an unnecessary one. Why take

---

[9] The only time Plaintiffs will get into trouble is if they imply restoration costs are mandatory and/or are the *only* way to value damages—as opposed to arguing they are a part of the overall conclusion.

[10] Plaintiffs recognize that their out-of-state residency is why this diversity action is in Federal Court. That said, diversity jurisdiction is undisputed and is a matter for the Court, not the jury.

the time and effort to dissect how jurors feel about Californians if there is no need to share that detail in the first place? Furthermore, discussing the matter may exacerbate it.

Next, MFR states that people will know Plaintiffs are from out of state because Cabin #16 is a vacation home and the only way to access Pistol Creek Ranch is via airplane. Not so. First, Idahoans and Californians own vacation homes in Idaho. Second, *everyone* must fly into Pistol Creek Ranch regardless of whether they are from McCall, Idaho, or Malibu, California. Thus, the fact that Cabin #16 is a remote vacation property does not lead to the conclusion that its owners are necessarily from outside of Idaho.

To the extent any mention of Plaintiffs' residency is brought up or necessary, the parties and witnesses need simply say Plaintiffs reside "out-of-state." Being from California plays no role in any claim or defense and does not make any fact more or less true in this case. It is, frankly, completely irrelevant.

This Motion is GRANTED.

2. *Real Estate Evidence: GRANTED in PART, DENIED in PART, WITHHELD RULING in PART.*

Next, Plaintiffs asks the Court to exclude certain real estate evidence MFR has identified as exhibits. These exhibits consists of four real estate listings, a Valley County Idaho assessor's record, and a "memo" written by one, S.E. Kirby, detailing the value of certain properties in Pistol Creek Ranch.

The Court addresses each below.

a.  Real Estate Listings

To begin, Plaintiffs contend that the four real estate listings (Dkts. 66-2–66-5) are

MEMORANDUM DECISION AND ORDER - 21

hearsay. This is true. MFR does not identify under which exception, if any, it intends to offer these documents to avoid a hearsay objection. Furthermore, Plaintiffs assert these "advertisements" cannot be admitted to prove fair market value because a listing is not an actual sale. That is to say, the price a property is *listed* at can differ greatly from the price of the actual *purchase* price of the property. *See Farr W. Invs. v. Topaz Mktg. L.P.*, 148 Idaho 272, 276, 220 P.3d 1091, 1095 (2009) ("[The] listing price of the real property is not substantial and competent evidence of its fair market value. The current listing price could be more or less than the land's fair market value.").

MFR counters by explaining that Plaintiffs misunderstand its purpose in seeking to admit these documents. It clarifies it is not intending to introduce these listings to show any actual market price, but just to show that there *is* a market to begin with. This hearkens back to the Court's discussion about damages. As Judge Bryan outlined, part of the measure of damages here is somewhat nebulous. Besides intrinsic value, aesthetic value and "personal or specific reasons" can be considered. In like manner, when "the relevant market is difficult to define," the finder of fact can weigh factors other than just those houses on the market—such as whether there is a market in the first place. Dkt. 22, at 10. It appears MFR wants to use these listings to show that there is a market in Pistol Creek Ranch. This would be acceptable under Judge Bryan's prior ruling. *See* Dkt. 22, at 12 ("[T]here are . . . issues of fact as to whether there is an open market on the cabins."). Additionally, MFR states that Brace has testified as to the value of certain properties and these flyers help put his statements in context. This too would be appropriate. As Judge Bryan previously explained, "Brace's testimony regarding the value of the property is

admissible. The arguments the Plaintiffs raise regarding his testimony go to the weight accorded it." Dkt. 22, at 11.

Plaintiffs reply by noting that *even if* MFR wanted to use these listings to show there is a market in Pistol Creek Ranch, the problem still exists that listings are different than sales. In other words, to the extent MFR wants to use these to show a "market," they might not even do that. The Court is not convinced. Plaintiffs have not provided anything defining "market" and whether there are requirements for buyers, sellers, offers, actual sales etc. Arguably, a market is still a market even if nobody is making offers.

To be sure, the Court shares Plaintiffs' foundational concerns. These documents are hearsay, and many are undated or unauthenticated. MFR will need to overcome such evidentiary hurdles before these items can be introduced. If it can do that, the Court is also concerned with the distinction Plaintiffs raised between *listings* and *actual sales*. This, however, is fodder for cross-examination.

In like manner, because Brace's testimony as to value is appropriate, rebuttal evidence and testimony is appropriate—if deemed admissible.[11]

In short, these materials are relevant. Cross-examination and closing arguments can highlight the weight any particular exhibit should be given. Threshold admissibility, however, is still an open question. MFR did not address how it intends to introduce these

---

[11] The Court considered redacting the price from these flyers so there would not be any confusion that they are only being admitted to show the presence of a market; not any type of valuation. However, MFR clearly also wants to show that the prices listed are comparable to Brace's testimony on the same topic. Thus, there is little reason to redact the information for certain questions only to un-redact it for others. Counsel should be mindful of their questions and provide explanations to be fair and clear with the jury. The Court would also entertain a jury instruction on the matter—to be read during the admission of these exhibits or with the other instructions after the close of evidence.

exhibits. Assuming proper foundation can be laid, and other relevant evidentiary rules are met, these exhibits can be admitted.

   b.  Valley County Assessor's Notice

Next, MFR wishes to introduce an exhibit purporting to be a document containing a statement of Cabin #16's assessed value in 2017 from the Valley County Assessor. Dkt. 66-7. MFR seems to imply this is a government record, but it has not explained whether it has been certified or is self-authenticating.

Further, Plaintiffs take issue with this document because it does not delineate *how* the calculations were reached. Because Idaho code is fairly specific on the methodology for assessing property value, Plaintiffs contend this document is not reliable.

The Court can only assume that a government employee followed the law when creating a tax assessment. But, Plaintiffs second concern on reliability as to the methodology merges with its first concern: admissibility in general. Unless MFR can lay some foundation for this document, it will not come in.

   c.  "Memo" by S.E. Kirby

Finally, MFR seeks to introduce a "memo" that contains statements about the valuation of properties in Pistol Creek Ranch—including Cabin #16. Dkt. 66-6.

To begin, it is unclear who Kirby is. The memo subject line is: "Pistol Creek Sales/Listings" and the document outlines—"per Rusty Brace"—the value, sale price, or listing price of nine cabins/lots. There is no indication of the purpose of this memo or who it was sent to. More importantly, there is no way to verify any of the information in the document. It is, as the documents suggests, based upon information told to Kirby by

Brace—i.e., the document is double hearsay. The Court finds this document should properly be excluded.

   d. <u>Conclusion</u>

   In sum, the Court agrees that all of these documents are hearsay. However, if MFR can provide an exception, some of them might come in. To be candid, the Court does not feel any exception applies to the memo. The county assessor record doesn't fare much better. The Court is most inclined to allow in the real estate listings because those go to one of the two main disputes in this case: the calculation of damages. Judge Bryan has already determined that this *type* of evidence is admissible. Whether this specific evidence is admissible remains to be determined. Assuming MFR can lay some foundation and provide an exception to Plaintiffs' hearsay objection, the listings can come in.

   *3. Contributory Negligence: DENIED*

   Finally, Plaintiffs ask the Court to exclude any argument regarding contributory negligence based upon Brace's admitted use of excess deck stain. This is a nuanced request.

   Factually, it is undisputed that Brace used more than the recommended amount of stain on the decks of Cabin #16. Plaintiffs here, however, ask that MFR not be allowed to argue these actions amount to contributory negligence (or comparative fault) because those defenses don't legally apply. To be clear, Plaintiffs concede MFR can argue contributory negligence based upon other events, acts, or omissions; but not based upon excess oiling. In their opinion, a structural fire is not a foreseeable consequence of over-oiling and, therefore, should not be presented to a jury. The Court disagrees.

   Plaintiffs argue Brace cannot be contributorily negligent because MFR's actions in

lighting the pilot light constitute a superseding "cause" severing the chain of proximate causation. While Brace over-oiled the deck the day prior to the fire, Plaintiffs contend the foreseeable result of that action is the inconvenience of extended drying time; not a structural fire. In Idaho, foreseeability is not a jury question "when the undisputed facts [] lead to only one reasonable conclusion." *Henrie v. Corp. of President of Church of Jesus Christ of Latter-Day Saint*s, 395 P.3d 824, 831 (Idaho 2017).[12] When that is the case, the Court "may rule upon the issue of foreseeability as a matter of law." *Id*. Plaintiffs argue because a structure fire was not foreseeable, there is only one reasonable conclusion—extended drying time—and there is no reason to confuse the jury with this information. The Court understands Plaintiffs' argument in theory, but not in practice.

To begin, Plaintiffs' own theory of the case is based upon the fact that Brace applied too much stain to the deck. It was this excess stain that purportedly combusted and caused the fire. Now, whether that combustion came from the pilot light, a cigarette butt, discarded rags, or ambient temperature is up for debate. In any event, Plaintiffs cannot use this crucial part of the story for their benefit, while simultaneously distancing themselves from it.

Second, fire is a foreseeable result of over-oiling. It does not take an expert to reach that conclusion. Plaintiffs themselves state in the opening paragraph of their motion that

---

[12] Plaintiffs rely heavily on the *Henrie* case as part of its argument and contend the facts are similar here. The Court does not think the cases are as analogous as Plaintiffs suggest. In *Henri*e, an individual was injured when he threw a log while cleaning roadside debris and that log caught in his oversized vest—a vest provided by the Church of Jesus Christ of Latter-Day Saints—and dragged him down a hill causing an injury. *See generally,* 395 P.3d 824. Henrie alleged that the risk of something getting caught in his oversized vest was foreseeable. The Idaho Supreme Court disagreed, finding that the specific injury (a knee injury) was not foreseeable from the alleged negligence (wearing an oversized vest). Plaintiffs argue the specific injury here (fire) was not foreseeable from the alleged contributory negligence (over-oiling). The Court cannot accept this argument.

"Penofin is a highly volatile, flammable wood treatment . . . ." Dkt. 67, at 4. The warning label from the Penofin can outlines as much. Dkt. 34, at 3. Plaintiffs, however, try to dissect this fact by stating that regardless of the amount of oil used: (1) spontaneous combustion is always a risk, and (2) nobody would suspect a person to show up and light an open flame while the oil was still drying. In other words, Plaintiffs assert that because a fire *might* have occurred regardless of the over-oiling, there is no reason to conclude Brace contributed to the fire. In Plaintiffs words, "although applying too much stain may be a 'but-for' cause of a structure fire, a structure fire is not a foreseeable consequence from the *specific* act of *over*-oiling itself." Dkt. 79, at 11.[13] Plaintiffs are trying too hard to make a distinction where there is none.

According to the oil's specifications, had Brace applied the appropriate amount of stain, it would have dried in four hours and been serviceable in twelve. Would that have prevented a fire? Nobody knows. But the fact remains: excess stain was used. This excess stain would undoubtedly increase the drying time and, in tandem, the risk of a fire. In this case, there was still wet stain some 20 hours after Brace's application. That a fire is *more* foreseeable because of *more* stain is not a stretch in logic.

Again, that is why this argument is a difficult to explain. Plaintiffs do not dispute Brace over-oiled the deck. Nor do they dispute the over-oiling caused the fire. They just dispute whether that act, in and of itself, could be considered negligent *based upon the idea*

---

[13]While agreeing that the excess stain could arguably be a "but for" cause of the fire, Plaintiffs disagree that a fire is foreseeable from the same excess stain. This conclusion does not make sense. While "but for" causation and "contributory negligence" are different legal principles, the distinction is not so great in this case that any evidence or argument that Brace's actions contributed to the fire need be excluded.

*that fire was not foreseeable.* Absent the last italicized phrase of the prior sentence, the answer has to be yes. Over-oiling *could* be considered negligent—depending on the circumstances. Thus, there is not "only one reasonable conclusion" and the issue must go to a jury. Plaintiffs state their conclusion in this manner:

> The specific act here that MFR alleges was negligent was not applying deck stain per se – it is not negligent to stain a deck or to apply a product according to its label. Rather, the allegedly negligent act was applying more deck stain than the label recommended. Yet, because the label warns of fire risk even if the product is used according to its label, what MFR must show (and cannot show) is that something about the *excess* oil caused a structure fire to become foreseeable when it would not have been foreseeable if *less* had been used.

Dkt. 79, at 12. Again, Plaintiffs are trying too hard to make a distinction where there is none. If a fire is a foreseeable consequence when oil is applied in accordance with the instructions, it stands to reason fire is all the more foreseeable if it is improperly applied. Thus, even with the italicized caveat in the Court's summary above, there is still a question of fact regarding whether the fire was foreseeable or not from over-oiling.

Because there is not just "one reasonable conclusion" that can be drawn from Brace's actions, the Court cannot rule as a matter of law that Brace's over-oiling was not contributorily negligent or that a fire wasn't a foreseeable result of those actions. Plaintiffs are free to argue that over-oiling did not make any difference in the overall scheme of things, but, ultimately, "it is for the jury to compare the negligence of all the actors." *Cramer v. Slater*, 204 P.3d 508, 517 (Idaho 2009) (cleaned up). The Motion is DENIED.

## V. CONCLUSION

In this case, the Jury will be asked to decide three primary issues: (1) whether MFR's negligence caused Cabin #16 to burn down, and (2) whether Plaintiffs were contributorily negligent, and (3) Plaintiffs' damages, if any.

In order to properly present these issues to the jury, the Court has made preliminary rulings regarding testimony and evidence. The parties should study the Court's decision—and Judge Bryan's prior decision—to ensure their presentation stays within the boundaries outlined.

And, as noted, depending on what testimony and evidence is ultimately presented, what foundation is laid, and what arguments are made, the Court will modify its holdings as required. Should it appear that the evidence is leading towards a ruling the Court has already made, either party should request a short recess so that the Court and counsel can discuss the matter outside of the jury's presence.

## VI. ORDER

IT IS HEREBY ORDERED:

1.  MFR's Motion in Limine (Dkt. 59) is GRANTED in PART and DENIED in PART as outlined above.

2.  Plaintiffs' Motions in Limine (Dkts. 65–67) are GRANTED in PART and DENIED in PART as outlined above.

3.  MFR's Objection to Spaulding Testifying (Dkt. 69) is OVERRULED.

DATED: July 7, 2022

David C. Nye
Chief U.S. District Court Judge