UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA FERNANDA ELOSU and ROBERT LOUISE BRACE, Individuals,<br><br>  Plaintiffs,<br><br>  v.<br><br>MIDDLEFORK RANCH INCORPORATED, an Idaho Corporation,<br><br>  Defendants. | Case No. 1:19-cv-00267-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

The Court enters the following order memorializing certain matters that arose during the recent trial in this case. First, the Court will address damages and follow-up on its oral ruling of July 13, 2022. Second, it will address an exhibit error that arose during jury deliberations.

### A. Damages

The issue of damages in this case was complicated. Leading up to trial, the parties expressed disagreement on the applicable timeframe that should be used, if at all, for determining restoration costs: 2017 (the time the cabin burned) or 2022 (the time of trial). The Court and counsel discussed the matter at the final pre-trial conference on July 11, 2022, and the Court asked the parties to brief the question. The parties obliged. Dkts. 92, 93.

On July 13, 2022, the Court orally entered it's ruling as follows:

MEMORANDUM DECISION AND ORDER - 1

The Court asked the parties to brief the question of whether the restoration costs in this case should be from 2017, immediately after the loss, or 2022, at trial. This is a difficult question. Both parties readily admit there are no cases that directly address this question. Thank you for your candor. I'm going to start with what we do know.

As Plaintiffs' counsel alluded to on Monday, the Court has not accepted either party's position on damages. Plaintiffs' original position -- and I think to some degree its continuing position -- is that damages should be restoration costs; that is to say, the cost to repair the property and bring it back to its pre-destruction condition. They contend this is the only way to determine damages. Judge Bryan and I have disagreed.

Defendant's original position -- and again, I believe their continuing position -- is that damages are solely the diminution of fair market value. Judge Bryan and I disagreed with that proposition as well. Recognizing as much, Defendants now take the position that if restoration costs are to be considered, it is only appropriate to consider the costs at the time of the loss, not now, some five years later.

Citing *Farr West Investments v. Topaz Marketing* and *Alesko v. Union Pacific Railroad*, Judge Bryan made it clear that this case involved a permanent damage but not total destruction of Plaintiffs' property. As a result, Plaintiffs are entitled to the diminution of the fair market value. He went on to explain that *Good v.* -- I can't even pronounce it -- *Sichelstiel* explained that this is not a rule of invariable application and that other considerations should be measured.

Finally, citing *McFarland v. Joint School District Number 365 in Elmore and Owyhee Counties*, Judge Bryan determined that the measure of damages in this case is a question of fact because the fair market value is difficult to define. He concluded by explaining that in this case, damages would be the diminution in fair market value and that restoration costs would be admissible evidence, assuming Plaintiffs can show exceptional circumstances.

In my decisions on the motions in limine, I summarized the matter as follows: "The damages in this case are the diminution of fair market value. However, numerous benchmarks, including restorative costs, should be considered when making that determination." I reiterated that the only way these other considerations come in is if Plaintiffs show they are warranted: the exceptional circumstances discussed in Judge Bryan's decision, such as where the market is difficult to determine, whether there are personal and specific reasons for valuation, or when justice so requires.

Again, however, that still brings us back to the question whether the larger framework of -- the time frame within the larger framework of the time frame for restorative costs. I understand Defendant's arguments, but the cases cited in Defense's brief always say things like immediately before the

injury. None that I can find, however, say immediately after the injury. They all say after the occurrence or after the loss. I can't really tell if that's an implication as to timing or not

I am persuaded by Plaintiffs' explanation that restoration costs go to the property as opposed to the party. Unlike traditional damages, the purpose of restoration costs is not to restore a plaintiff to his or her prior economic position; rather, the purpose is to restore the property to its pre-loss condition. Restoration costs are not directed to Plaintiffs' economic state. They are directed to restoring the Plaintiffs' property right to own, possess, and use the property itself.

The nuisance and personal injury cases that were cited by the parties helped drive this point home, but as I mentioned, the idea that restore or repair goes to the property lends itself to a conclusion that costs should be determined at the time of the restoration or rebuilding, whenever that is. Presumably, had plaintiffs rebuilt their cabin in 2017 or 2020, they would be asking for those actual costs at trial.

It therefore makes logical sense to seek the measure of damages now. This arguably benefits Plaintiffs because prices have risen since 2017, but again, who knows what the future holds? Maybe things will skyrocket from here and Plaintiffs still won't be able to build for 2022 costs if they recover that.

In sum, there does not appear to be any case directly on point. Weighing all the cases and factors, my ruling is that witnesses can testify to current costs. Plaintiffs can argue current costs. Defendant can argue that the costs should not be taken into account in the first place because this is not one of the unique circumstances as described in case law where restorative costs should apply, but Defendant cannot argue costs are limited to 2017.

And frankly, in my mind, as I was talking to Bennett about this, it seems to me this is not that different than the typical personal injury case where a plaintiff is in a car accident, they go to the hospital, a year later they file suit, they go to trial, and they can recover for all medical expenses up to that trial. If that trial is a hung jury and they have to have a second trial and between the two trials they have more medical costs, they get to ask for those too. So that's my ruling as far as economic damages.

Following its ruling, Defense Counsel asked the Court's opinion regarding a particular case it had presented in support of its position—*Spanbauer v. J.R. Simplot Co.*, 685 P.2d 271 (Idaho 1984)—and why that case was not controlling. The Court indicated it would expound upon its oral ruling in a written decision. Thus, in addition to what was

MEMORANDUM DECISION AND ORDER - 3

said during trial, the Court adds the following specifically as it relates to the *Spanbauer* case.

In its brief, Middlefork Ranch claimed the facts in *Spanbauer* are similar to those present here and that, therefore, the Idaho Supreme Court's holding in that case should apply here as well. Not so.[1]

In October of 1976, plaintiff Spanbauer discovered the J.R. Simplot corporation had been polluting his land with fluorides for over 30 years (since 1943). This pollution wreaked havoc on his cow-calf operation. Eventually, Spanbauer moved his operation and sued Simplot for pollution on the ground that his land had suffered permanent injury.

Spanbauer argued his damages were the diminution in the property's value based on the permanent injury. Of note, his claim for permanent damage to his property was subject to a four-year statute of limitation under Idaho Code § 5-224. Thus, Spanbauer had to show the diminution of fair market value between 1976 (when he discovered the pollution) and 1980 (when the statute of limitations ran). During trial, however, Spanbauer presented evidence "only [as to] the value of his property, *at the time of trial,*[2] with and without contamination." *Spanbauer* 685 P.2d at 274. This is what the Idaho Supreme Court took issue with, explaining:

> Since the contamination of Spanbauer's land began before October, 1976, it would not have been possible for Spanbauer to attempt to prove the value of the land before any contamination because to do so would allow him to recover for all damage incurred without regard to the four-year statute of

---

[1] Plaintiffs assert the *Spanbauer* case is not applicable *at all* because the injury in that case was permanent, whereas the injury in this case was temporary. This assertion, however, is at odds with Judge Bryan's prior decision wherein he found that this case involved a permanent damage. Dkt. 22, at 9.

[2] Trial took place sometime after 1980.

MEMORANDUM DECISION AND ORDER - 4

> limitations. To recover for his injury, Spanbauer was required to prove the value of the property at the beginning of the limitation period, before the damage done within that period occurred, so that a comparison could be made between the market value of the land before the compensable damage began and the value of the land after the compensable damage occurred. Spanbauer totally failed to enter any proof into the record of the market value of his land at or near the beginning of the limitations period. Instead, Spanbauer testified to the present value of his land, with and without the fluoride damage. Use of such a formula would be improper, not only because it is not the correct measure of damage for permanent injury to land, but also because it would allow Spanbauer to recover damages for a longer period than allowed under the statute of limitations.

*Id*.

While there are some similarities between *Spanbauer* and the present case, differences abound. First, the injury at issue in *Spanbauer* was ongoing—in fact it had been ongoing for 30+ years; in this case, we have a singular injury—the fire and resulting loss of Cabin #16. Second, *Spanbauer* did not present any evidence for the value of his land prior to the injury; in fact, it appears he had no way to value his land before the applicable timeframe because he had bought the land long before that time. In the present case, we know the value of the cabin before the loss. Finally, and most importantly, there was a statute of limitations involved in *Spanbauer*. No such limitation exists here.

To be sure, the Idaho Supreme Court stated the measure of damages was the diminution of market value.[3] And they said Spanbauer utilized the wrong timeframe for his calculation. That said, the Idaho Supreme Court did not specifically say what timeframe

---

[3] The Court in *Spanbauer* was not presented with, nor did it discuss, any exceptions to the general rule. This is not surprising, however, as most of the cases discussing this nuance post-date *Spanbauer*. *See, e.g., Weitz v. Green*, 230 P.3d 743 (Idaho 2010); *Farr W. Invs. v. Topaz Mktg. L.P.*, 220 P.3d 1091 (Idaho 2009); *Nampa & Meridian Irr. Dist. v. Mussell*, 72 P.3d 868, 874 (Idaho 2003); *McFarland v. Joint Sch. Dist. No. 365 in Elmore & Owyhee Ctys.*, 700 P.2d 141 (Idaho Ct. App. 1985).

MEMORANDUM DECISION AND ORDER - 5

Spanbauer *should* have used. By all accounts, their criticism of his chosen timeframe was that it "would allow [him] to recover damages for a longer period than allowed under the statute of limitations" not because he was using currents rates in itself.[4] *Id.*

As the Court explained in open court in this trial, no case on this issue uses phrases such as "immediately after the injury" or even "soon after the injury." In each situation—including *Spanbauer*—the Court simply says "after." *Id.* (". . . the value of the land after the compensable damage occurred."). Such language makes logical sense. Often it might be difficult to determine the value of the injury right after the events in questions—especially when the extent of the injury or damages is not fully known. The Court is not advocating for lengthy delay or gamesmanship, but the fact remains that the purpose of any award is to "restore the[] property owners to the position they enjoyed prior to a tortfeasor's interference." *Weitz v. Green*, 230 P.3d 743, 759 (Idaho 2010). If market fluctuations make that award larger or smaller than it would have been at other times, such is unavoidable.[5]

Thus, while there are some *principles* that can be gleaned from *Spanbauer*, the Court

---

[4] Said differently, an inference could be made that the Idaho Supreme Court simply did not approve of Spanbauer's choice to use the current rates at the time of trial (as MFR contests in the present case). But where the disapproval is couched in terms of the statute of limitations, the Court believes that is what the Supreme Court was focused on. This is a small, but critical distinction. Spanbauer did not present *any* evidence of *any* valuation of his land prior to trial; he only presented current rates (with and without contamination) all of which were outside of the statute of limitations period. The fact that his rates were outside of the limitations period is what the Supreme Court seemed to find improper.

[5] And again, the opposite method would not serve the ends of justice. Say, for example, that Plaintiffs in this case only received the market value of their cabin immediately after the fire. While this figure is not fully known, the parties and experts seem to agree the amount would be less (possibly *significantly* less) than what Plaintiffs sought at trial last week. However, were the Court to limit Plaintiffs' damages to the timeframe immediately following the incident, Plaintiffs would not be able to rebuild their cabin—they would not be "restore[d] . . . to the position they enjoyed prior to [MFR's] interference." *Weitz,* 230 P.3d at 759. Such a result is inequitable.

did not find it overly helpful in this case and chose not to reference it in its decision on the appropriate timeframe for restorative costs.

On the issue of damages, the Court includes a final thought. During trial, both sides eluded to the fact that Judge Bryan's prior decision (Dkt. 22) was somewhat confusing and/or that he had conflated the principle of "permanent damages" and "temporary damages" and then, as a result, whether restorative cost could be considered in this case. The Court notes that *neither* party sought reconsideration before Judge Bryan. *Neither* party motioned for clarification. And *neither* party asked the undersigned to revisit Judge Bryan's decision. Thus, while both sides seem to agree certain *critical* language was confusing and could have benefitted from clarification, neither side sought to make that happen. This greatly concerns the Court.

The parties operated as though the matter was settled but continue to argue against Judge Bryan's decision for various reasons. The Court leaves to the parties to decide where to go from here; however, looming questions exists. For example, judgment was already entered in this case once so that the parties could appeal the undersigned's *Daubert* decision. The degree to which that judgment and appeal may affect any appeal from trial—or earlier decisions—remains to be seen. Furthermore, the fact that both parties proceeded to trial based upon a ruling neither apparently agreed with does not follow principles of economy and efficiency.

### B. Jury Deliberations Exhibits

Shortly after the jury began deliberations in this case, the Courtroom deputy realized that the entire exhibit packet had been sent back with the jury—including numerous

exhibits that *had not* been admitted during trial. The Court's law clerk retrieved the laptop from the jury room and, upon investigation, confirmed the jury had exhibits they should not have. The Court held a short hearing on the record to discuss the matter. Thankfully, the District of Idaho's IT department was able to retrieve a record of exhibits the jury had already viewed.

This record—included as a sealed attachment to this decision—illustrates the jury *did not* view any exhibits that were not admitted; nothing improper was considered. The bottom portion of the diagram (highlighted in yellow) indicates exhibits the jury viewed. The top portion (highlighted in red) indicates exhibits and computer functions the Court and IT staff viewed in an effort to understand what was visible to the jury and whether the computer was functioning properly. The Court includes that diagram here to complete the record.

### C. Conclusion

The Court enters the above order to complete the record in this case and memorialize certain rulings that occurred during trial.

DATED: July 28, 2022

_____
David C. Nye
Chief U.S. District Court Judge